## MUTUAL LIFE INS. CO. OF NEW YORK v. ROSE et ux.

### (District Court, E. D. Kentucky. October 13, 1923.)

1. Courts ☞278—Jurisdiction depends on situation when suit is brought.

   If the amount involved when the suit is brought is sufficient to give a federal court jurisdiction, it does not lose such jurisdiction because subsequent events may reduce the amount.

2. Courts ☞328(4)—Amount involved in suit for cancellation of two instruments held value of both.

   In a suit for cancellation of two insurance policies between the same parties, on the same ground, the amount involved is the value of both policies.

3. Insurance ☞247—Rescission by insurer effective under incontestable clause in life policy.

   Under a provision of a life policy that it shall be incontestable after two years from its date of issue, except for nonpayment of premiums a rescission may be effected by the insurer for false representations in the application by tendering back premiums paid and demanding surrender of the policy within the two years, and such rescission may be the basis for a suit for cancellation, or of a defense to an action on the policy after the expiration of the two years.

4. Cancellation of instruments ☞10—Equity has jurisdiction of suit for cancellation of life policy during lifetime of insured.

   Equity has jurisdiction of a suit for cancellation of a life policy during the lifetime of the insured, the insurer having no remedy at law.

In Equity. Suit by the Mutual Life Insurance Company of New York against Grover C. Rose and wife. On motion to dismiss bill. Denied.

Bruce, Bullitt & Gordon, of Louisville, Ky., for plaintiff.
Burnam & Greenleaf, of Richmond, Ky., for defendants.

COCHRAN, District Judge. This cause is before me on defendants' motion to dismiss the bill as amended. It is a suit in equity to cancel two life insurance policies issued upon the life of the defendant Grover C. Rose, in favor of his wife, the defendant Annie P. Rose. One was issued on or about July 25, 1919, and is so dated. The other was issued on or about August 14, 1919, and bears that date. Both were issued on the faith of the statements in the same application. One provided for the payment of $3,000, and the other of $2,000, on the death of the insured, resulting otherwise than from bodily injury, and for double liability on death from such injury, if the death was effected solely through external, violent, and accidental means. The ground upon which cancellation is sought is that the policies have been rescinded. The allegation is that the application contained misrepresentations as to the insured's health and liquor habits, that plaintiff became aware of such misrepresentations, and, on the ground thereof, on or about April 14, 1921, tendered to the defendants the premiums which had heretofore been paid, and demanded the surrender of the policies to it, which they refused, and thereby it is claimed the policies became and were rescinded.

[1, 2] Two grounds of dismissal are urged: The first is want of jurisdiction, because the amount in controversy does not exceed $3,-

000 as to either policy. But the amount in controversy does exceed that amount as to each policy, in that each provides for double liability in the contingency stated. It is urged that the insured has died of tuberculosis since the bringing of this suit, and there is no possibility now of that contingency happening. There was, however, a possibility of its happening when the suit was brought. And jurisdiction depends on the situation as it exists at the time suit is brought and not on what happens thereafter. Besides, even if the policies did not provide for any greater liability than $3,000 and $2,000, respectively, in determining the amount in controversy, these two sums should be added together.

The other ground of dismissal is on the merits. Each policy contained an incontestable clause, which is in these words:

"This policy shall be incontestable after two years from its date of issue, except for nonpayment of premiums."

This suit was brought more than two years after the date of issuance of each policy. It was brought January 31, 1923. It is defendants' contention that plaintiff had no right, because of this incontestable clause, to bring this suit at the time it did; and this is the sole reason why it urges that the bill should be dismissed on the merits. It is my purpose to consider this question, thus raised, first from the point of view of the authorities, and then from that of principle. The defendants contend that their position is upheld by the following authorities: Mutual Life Ins. Co. v. Buford, 61 Okl. 158, 160 Pac. 928; American Trust Co. v. Life Ins. Co. of Va., 173 N. C. 558, 92 S. E. 706; Ebner v. Ohio State Life Ins. Co., 69 Ind. App. 32, 121 N. E. 315; Hardy v. Phœnix Mut. Life Ins. Co., 180 N. C. 180, 104 S. E. 166; Ramsey v. Old Colony Life Ins. Co., 297 Ill. 592, 131 N. E. 108; Reliance Life Ins. Co. v. Thayer, 84 Okl. 238, 203 Pac. 190.

As I read the opinions in these cases, so far as the things actually decided in them is concerned, they are not in point. All that defendants can gather from them in support of their position is certain expressions made arguendo. In each case, except the Ebner Case, an action was brought on the policy after the maturity thereof—i. e., after the death of the insured—and the questions in it were raised by defense to the action. In that case, suit was brought by the insurer to cancel the policy. It, too, was brought after such maturity. In the Buford Case, the defense relied on was misrepresentations by the insured, in his application, in regard to his family history, occupation, residence, and excessive use of alcoholic liquors. The policy contained an incontestable clause in the same words as here. It was issued May 17, 1906. The insured died November 8, 1911. The suit was brought some time after that, and the answer, setting up this defense, was filed in 1913. On October 30, 1907, before the expiration of the two years, the insurer undertook, as it is stated, to rescind the policy on the ground of misrepresentation in the application as to the insured's liquor habits, and offered to return the premium theretofore paid, which offer the insured refused to accept. There was no evidence on the trial of misrepresentation in regard to such habits. As to the alleged misrepresentations in the other particulars, the evidence preponderated in favor of de-

fendant's contention. It was held that plaintiff was entitled to recover, notwithstanding such misrepresentations, because of the incontestable clause. It is to be noted that, in this case, there had been no rescission of the policy prior to the suit. The only possible basis for claiming that there had been was by reason of the tender on October 30, 1907; but this did not effect a rescission, because there had been no misrepresentation in the matter of the insured's liquor habits. The court said:

"An unwarranted effort on the part of the defendant within two years from the date of the policy to declare said policy void on account of the breaches of warranties in the application of insurance, as to the habits of the insured as to the use of intoxicating liquors, would not, in our opinion, entitle the defendant, after the expiration of two years after the date of issue of said policy, to interpose a defense to the action other breaches of warranties contained in said application for insurance."

This disposed of this case, and there was no occasion for saying anything further. The expressions which may be relied on as favoring defendants' contention, and which were purely obiter, are these:

"The defendants failing to show that within two years from the date of policy that legal action had been taken to avoid the policy on account of breaches of the warranties in the application for insurance, or that said policy had been canceled with the assent of the insured, the court properly overruled defendant's demurrer to the evidence, correctly denied motion for a directed verdict for defendant, and properly directed a verdict for the plaintiff."

And again:

"Certainly, in the absence of authority contained in the contract of insurance, the insurer was without power to determine as to the truthfulness of statements contained in the application for insurance, and to declare the policy forfeited. If the insurer desired, to avoid the policy, on the ground of misrepresentations contained in the application for insurance, it should, in the absence of the consent on the part of the insured and the beneficiaries named in the policy have taken legal steps to do so within two years from the date of issuance of the policy, and, failing so to do within two years from the date of the issue of the policy, the policy of insurance was incontestable on the ground of breaches of warranties contained in the application."

If, by the taking of legal action or of legal steps, referred to in these quotations, was meant the bringing of suit to avoid the policy, the implication therefrom is that such suit cannot be brought after the expiration of the contestable period; and it is to be noted that the second quotation does not recognize the possibility of an avoidance or rescission of the policy by the act of the insurer in tendering back the premiums and demanding the policy, if in fact there was misrepresentation in the particular claimed as the basis for such action.

In the American Trust Company Case, which is the one mainly relied on by the defendants, the policy was issued March 4, 1913. The insured died February 7, 1915. The incontestable clause was exactly the same as that in the policy sued on, except that the period after which it was to be incontestable was only one year. Within that period the insurer notified the insured that it elected to rescind the policy, and tendered a return of the first premium on the ground that it had discovered facts which, in its opinion, rendered the policy void; but it refused upon the request of the insured to

state what the facts were. It was held that the plaintiff was entitled to recover notwithstanding such action on defendant's part. Clearly it did not effect a rescission of the policy, even though ground may have then existed entitling defendant to a rescission. What defendant did was, in effect, an assertion on its part of the right to rescind the policy irrespective of the existence of such ground or the consent of the insurer. I do not understand that rescission of a contract for fraud can be brought about otherwise than by stating the fraud on the ground of which the right to rescind is based. Here the defendant merely stated that it had discovered facts which in its opinion rendered the policy void, and, on being requested to state what these facts were, refused to do so. The court, in disposing of the case, treated defendants' action as in effect an assertion of such a right. In the statement of facts it is said:

"There is no provision in the policy giving the defendant the right to cancel it."

In the opinion it said:

"It takes two to make a contract, and, while one may cause a breach, it takes two to rescind or cancel it, unless there is some provision in the contract itself authorizing its rescission or cancellation at the option of one of the parties, which is not a feature of the policy in this case."

It is to be noted that no recognition is given in this statement of the undoubted right of a party who has been induced to make a contract with another by misrepresentation on such other's part to rescind the contract by his own act without the consent of the other party, or such right being conferred by the contract itself, on the ground of such misrepresentation, by the tender back of what has been received under the contract. Again it said:

"When the policy was issued, mutual obligations were undertaken by the plaintiff and the defendant, the plaintiff agreeing to pay the premiums and the defendant agreeing to pay the amount of the policy upon the death of the insured, and when the defendant notified the plaintiff that it would cancel the policy, and tendered the return of the first premium, it was guilty of a breach, usually designated as a breach by renunciation."

Clearly, then, this case is not in point in the matter of the thing actually decided in it. There had been no avoidance of the policy by rescission within the one-year period; and it was too late to avoid it by its defense to the suit to recover on the policy long after the lapse of that period. But the court did not stop here. It went further, and dealt generally with the matter of the right of an insurer from whom a policy has been obtained by fraud. It is in so doing that expressions may be found favoring defendant's contention here. It said:

"The insurance company also has the right, if it concludes that the policy has been improperly procured, to institute an action for the cancellation of the policy within the year."

Again:

"The remedy of the defendant was to institute an action for cancellation within the year, and, as it did not do so, the policy was in force at the expiration of the year. This is also in accordance with the authorities holding that, if the defendant wishes to contest and to avoid the payment of

the policy and the force of the incontestable clause, it must take affirmative action within the time limited by the policy."

It then quotes from the opinion in the case of Insurance Co. v. McGinnis, 180 Ind. 16, 101 N. E. 291, 45 L. R. A. (N. S.) 192, thus:

"An examination of the following cases will show that the holding of the courts of this country has been, almost universally, that every defense to a policy of insurance embraced within the terms of the 'incontestable clause' is completely lost to the insurer if it fails to make the defense or *take affirmative action within the time limited by the policy*."

The words "take affirmative action within the time limited by the policy" were emphasized by being put in italics. It then quoted from the opinion in Murray v. Insurance Co., 22 R. I. 525, 48 Atl. 800, 53 L. R. A. 742, as to the incontestable clause, thus:

"The practical, and evidently the intended, effect of the stipulation in question, was to create a short statute of limitations in favor of the insured, *within which limited period the insurer must, if ever test the validity of the policy*."

The words "test the validity of the policy" here were also italicized. Nothing was said in the one quotation as to what was had in mind by the words "take affirmative action," or in the other as to what was had in mind by the words "test the validity of the policy." The court then proceeded to set forth what it conceived was had in mind by these words. It said:

"The meaning of the terms 'take affirmative action,' 'test the validity of the policy,' if in doubt, is made clear by the decision in Wright v. Benefit Ass'n, 43 Hun, 65, which was affirmed in 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749, in which the court, speaking of a policy, which became incontestable after two years, says: 'Its effect is not to prevent the insurer from annulling the contract upon the ground of the fraudulent representations of the insured, provided an action * * * is brought in the lifetime of the insured, and within two years from the date of the policy.'"

It concluded with these words:

"We are therefore of opinion, * * * as no action was brought by the defendant within one year from the date of the policy to have the contract of insurance canceled or rescinded, that the incontestable clause was in force at the death of the insured, and that the defendant is precluded thereby from relying on the defenses set up."

The policy of insurance involved in the Ebner Case contained a one-year incontestable clause similar in its verbiage to the one in the policies here involved. The policy was issued May 29, 1914. The insured died November 23, 1914; i. e., within the year. January 15, 1915, the insurer notified the personal representative of its election to rescind the policy on the ground of misrepresentation in the application on the faith of which it was issued, and tendered the premium that had been paid, with interest, and demanded cancellation of the policy. This was refused. On May 18, 1915—i. e., within the year—the insurer brought suit against the personal representative of the insured to cancel the policy. September 16, 1915, the defendant filed a demurrer to the complaint and a cross-complaint. October 8, 1915, the lower court sustained a demurrer to the complaint. November 2, 1915, the plaintiff filed answer to the cross-complaint, alleging as a defense the facts

alleged in the complaint as the basis of the relief therein sought. Judgment was had for plaintiff, and defendant appealed. The judgment was affirmed. The defendant's, or appellant's, position was thus set forth in the opinion:

"It is the appellant's contention that the rescission of the policy and the bringing of an action to cancel it was not sufficient to amount to a contest of the policy, for the reason, as appellant contends, that after decease of the insured the insurer may not proceed in equity to be relieved of the policy, that in any such case he has an adequate remedy by defending against an action at law, brought on the policy, and that as a consequence a court of equity has no jurisdiction to entertain a suit to cancel the policy or any proceeding directed to a like end. Hence appellant argues that, as appellee's suit to cancel was of necessity void of results, no sufficient steps to cancel the policy were taken until the filing of the answers to the cross-complaint, which was after the expiration of the year, and therefore prohibited by the policy."

According to this, if the insured died within the year, his personal representative or the beneficiary under the policy could refrain from bringing suit on the policy until after the expiration of the year, and thereby cut out the insurer from making any defense to the policy on the ground of misrepresentations in the application therefor. The plaintiff or appellee contended that the incontestable clause had no application where the insured died before the expiration of the year. The Appellate Court decided against both these contentions. It was open to it to have decided that, the policy having been rescinded within the year, such rescission could be set up as a defense to the suit thereon by the cross-complaint after the expiration of the year. If it had so decided, the case would have been an authority in support of plaintiff's contention here—a direct authority. But it would seem that it upheld the defense made to the cross-complaint after the expiration of the year because of the filing of the complaint within the year. It said:

"The special finding here is to the effect that appellee, as a result of an investigation completed January 15, 1915, discovered the falsity of certain answers and statements made by the insured as set out in the finding, and that he was not in good health at the time of the delivery of the policy; that thereupon appellee, by reason of the facts, elected to rescind the policy, so notified appellant, tendered the premiums, and kept the tender good; that two days before the expiration of the period named in the incontestability clause it commenced this action. A cross-complaint having been subsequently filed, it predicated its answers thereto on the facts that were the basis of its election to rescind. The complaint alleged as grounds for recourse to equity the fact of the incontestability provision and that appellant intended to delay action on the policy for the purpose of depriving appellee of its defense. It would seem that such fact was sufficient to invoke the jurisdiction of equity. We conclude that it sufficiently appears that within the year appellee proceeded by affirmative action to contest the policy, and that such contest was continued thereafter without interruption until its final conclusion in the trial court. It follows that under the circumstances here the incontestability clause did not bar appellee from making its defense."

But the fact that the court based its action on the fact that the insured had within the year taken affirmative action in the form of a suit to cancel the policy, based upon the previous rescission, does not make the case an authority against the position that such rescission could have been pleaded as a defense to a suit on the policy after the expiration of the year.

The other three cases, to wit, the Hardy, Ramsey, and Thayer Cases, were substantially alike. In each case the verbiage of the incontestable clause was the same as that in the two policies here, except that the period of contestability was one year, instead of two. In each one of them the insured died during the year, and suit was brought upon the policy after the expiration of the year. In each the defense set up was misrepresentation as to material facts in the application on which the policy was based; also in each the defendant sought to get rid of the clause as to incontestability by claiming that it had no application to a case where the insured died during the period of contestability, and that it only applied where he survived that period. This appears more clearly in the Hardy and Ramsey Cases than in the Thayer Case. In neither case had there been any rescission of the policy within the period of contestability. In the Thayer Case the insurer got hold of the policy during that period without the consent of the insured or beneficiary, and undertook to cancel the policy. This, of course, it had no right to do. Clearly neither one of these cases is in point here. There are, however, expressions in them, mainly in the Ramsey and Thayer Cases, which favor the defendants' contention. In the Ramsey Case this is said as to the incontestability clause:

"The language is not ambiguous. It admits of no reasonable construction, as the courts have said in the cases already cited, other than that the company may have one year, and no more, for investigation of the questions material to its risk, and if it does not within that time, either as plaintiff or defendant, contest the policy, it cannot do so afterward. Such contest can be made only by proceedings in court to which the insurer and the insured, or his representatives or beneficiaries, are parties."

It cites in support of this statement the Buford and American Trust Co. Cases heretofore analyzed. In this connection should be noted its interpretation of the Ebner Case. It said:

"The insured died within six months, and the company, after an investigation, began an action two days before the expiration of the year to cancel the policy on the ground of fraud in procuring it to be issued. Several months later the defendant demurred to the complaint and filed a cross-complaint on the policy. The demurrer to the complaint was sustained, and afterward answers were filed to the cross-complaint. After a hearing a decree was rendered n favor of the insurance company and the defendant appealed. The trial was actually on the cross-complaint, and the issues were made on it, but the Appellate Court held that the filing of the complaint in a court of equity, alleging the fact of the incontestable provision, and that the defendant intended to delay action on the policy for the purpose of depriving appellee of its defense, was sufficient to invoke the jurisdiction of a court of equity, and that it sufficiently appeared that within the year the appellee proceeded by affirmative action to contest the policy, and that the contest was continued thereafter, without interruption, until its final conclusion in the county court. While the judgment was actually rendered on the policy and on the issues made on the cross-complaint for its enforcement, the court, in effect, sustained the equitable jurisdiction of a suit to cancel the policy after the death of the insured within the contestable period, and treated the case as a proceeding to contest liability on the policy from the date of the filing of the original complaint."

In the Thayer Case it is said:

"Reserving in a contract the right to contest any of its terms or provisions presupposes the right to resist such contest, and that such contest shall take

place before some person or tribunal with power and authority to decide the questions raised by such contest."

Again it is said:

"If the answers made by the insured in his application for the policy were false to such an extent as to constitute a fraud upon the insurance company, this would be ground for the cancellation of the policy; but the insurance company is not the sole judge of the falsity of the answers, or whether a fraud had been perpetrated upon it. The insured purchased the policy of insurance for a consideration, and he had a right to assert the truthfulness of his answers, resist the charge of fraud, and have these questions judicially determined. Assuming the beneficiary had no vested interest, the insurance company could cancel the policy at any time with the consent of the insured. If the insured did not consent, then the remedy of the insurance company was to bring an action to cancel the policy on the ground of fraud or falsity of answers; but, under the incontestability clause in the policy, such action must be brought within one year from its date."

It is thus seen that in one only of these six cases, to wit, the Ebner Case, had there been a rescission of the policy of insurance during the period of contestability. In the other five there was, therefore, not presented or considered the question whether, if there had been a rescission during such period, a suit might be brought to cancel the policy on the basis of such rescission after the expiration of such period, or whether in a suit brought on the policy thereafter such rescission could be relied on as a defense to the suit. This consideration deprives any general expressions in the opinions in those five cases so broad as to negative the right of the insurer either so to sue or to defend of any real value. In the Ebner Case the rescission which was set up as a defense to the action brought on the policy after the expiration of the period of contestability was held by the lower court to be a good defense to such action, and this decision was affirmed by the Appellate Court. What prevents that decision from being an authority against the defendants' position is the fact that the action on the policy was not an original action, but a cross-action brought in an original action by the insurer to cancel the policy which was brought before the expiration of such period, and it was held that the dismissal of this original action by the lower court was erroneous.

I come now to the authorities appealed to by the plaintiff. They are the decisions in the cases of Mutual Life Ins. Co. v. Hurni Packing Co. (C. C. A.) 280 Fed. 18, and Jefferson Standard Life Ins. Co. v. McIntyre (D. C.) 285 Fed. 570. In the McIntyre Case the incontestability clause was different from that in the policies in suit and in those involved in the cases relied on by defendant. It was in these words:

"After this policy shall have been in force for one full year from the date hereof, it shall be incontestable for any cause except for nonpayment of premiums."

The difference consists in this: That whereas, in those policies the provision was that they should be incontestable after the lapse of the prescribed period from the date of the policy in the policy involved, in the McIntyre Case it was that there should be such incontestability after the policy should have been in force for the prescribed period. In the Hardy, Ramsey, and Thayer Cases it was contended that such was the real meaning of the clause there involved, and because of this

it had no applicability, unless the insured survived the period of contestability. The decision of the court in each case was against this contention. But here it was expressly so provided, and hence there was the greater reason for the position that it had no application, except·in that contingency. In this case a suit in equity had been brought by the insurer to cancel the two policies involved, and that because of fraud in their procurement. They were issued July 26, 1921, the insured died June 25, 1922—i. e., within the contestable period—and the suit was brought July 24, 1922, also within that period. The bill alleged that the defendants would delay the bringing of the suits on the policies until the year elapsed, and thus preclude the plaintiff from making defense on the ground set up as a basis for cancellation. A motion was made to dismiss the bill for want of equity, and it was sustained. The question raised by the motion was thus stated:

"Therefore the question to be decided on the motion of the widow and children is: Is it necessary for the insurance company to commence an action in the courts before the expiration of one year in order to avail itself of the defense here sought to be made in the bill?"

That it was not necessary, and the bill was therefore without equity, was based on two grounds. The first one was that, as the insured had died within the contestable period, the policies had ceased to ·be in force, and hence the incontestable clause had no application. It had application only in case he survived that period. It was said, continuing the above quotation:

"Are the policies 'in force,' as contemplated in the clause, after the death of the insured occurring prior to one year from the date of the policy? It seems to me that the proper construction of this clause is that it contemplates the continuance of life of the assured during that year; else why except the nonpayment of premiums?"

The other ground was that, though the incontestability clause applied to the case, the insurer was not restricted to a judicial proceeding to contest the liability. It was said:

"But, aside from this view there is nothing in the clause which confines the contest of liability to judicial· proceedings. This contest could be effectually inaugurated by a denial of liability in any form. To say that the beneficiaries under the policies could delay bringing suits until the expiration of the year, and thus preclude the insurer from setting up a defense, is a forced construction of the clause. The contract between the assurer and the assured, in a measure at least, is terminated by the death of the assured, and the contract is then between the assurer and the beneficiaries under the policy, and to allow these beneficiaries to delay bringing suit until after the year had expired would be allowing them to take advantage of their own acts to the detriment of another, and yet the construction sought to be placed upon this clause in the bill would inevitably lead to this result."

This decision, therefore, may be said to be in point here; for, though it might have been based upon the first ground, it was not. It was based on the second ground just as much as on the first.

In the Hurni Packing Company Case the clause of incontestability was exactly the same as here. The policy was dated August 23, 1915, and provided for the payment of subsequent premiums upon each August 23 thereafter. It was in fact executed September 7, 1915, and delivered September 13, 1915. The insured died July 4, 1917; i. e.,

within two years from the date of the policy. On August 24, 1917—i. e., after the expiration of that time, but within two years from the date of the delivery of the policy—the company declined to pay the policy upon the ground of misrepresentations in the application on which the policy was issued. This was the first action of any nature taken by the company in the way of contesting the policy. And at no time did it bring any suit in which it sought the cancellation of the policy. Action was brought on the policy, apparently after the lapse of two years, not only from the date of the policy, but also from that of its delivery. In the answer the defendant set up the misrepresentations in the application on which the policy was issued, and the plaintiff in reply relied on the clause of incontestability. There had been no suit brought at any time to cancel the policy. The only contest of liability thereon consisted in the repudiation of liability on August 24, 1917. This repudiation was after the lapse of two years from the date of the policy, but within two years from the date of its delivery. It was taken for granted that such repudiation was a sufficient contest of liability, and that the only question for decision was as to when the two years ran, from the date of the policy or the date of its delivery. It was held that it ran from the date of the policy, and hence that the repudiation came too late, and the beneficiaries were entitled to recover. Judge Sanborn dissented, on the ground that it ran from the later date, and hence the repudiation was in time. The defendant had contended that the incontestability clause had no application, because of the death of the insured before the expiration of the contestable period. This was held not to be well taken. In the majority opinion it was said:

"It is contended by the insurance company that the policy must have been in effect two years during the life of the insured; otherwise, the right of the insurance company to contest became fixed by death within the period of limitation. We cannot agree with this view. The reservation for the benefit of the company was one that might be waived. Affirmative action was necessary to the consummation of the inchoate right created by the terms of the policy."

Then as to the question as to whether the repudiation of liability on the policy was sufficient affirmative action to bring such inchoate right into effect it was said:

"We are equally of opinion that a repudiation of the claim of defendant in error, such as that made in the letter of August 24th, was a sufficient act of contest, and that court proceedings were not essential to the assertion of the right, as counsel for defendant in error contend."

Here the position thus stated was not argued for. It was only argued from. In other words, it was the presupposition, the necessary presupposition, of the question that was actually considered and decided. Without it there was no such question in the case for consideration and decision. Hence it was that, as I say, though this position was not argued for, it was argued from. And this I take it is sufficient to make the decision a direct authority here in favor of the plaintiff's position. What this survey of the authorities cited and relied on yields, therefore, is that there are two direct authorities against defendants' contention and none in support of it, except possibly the decision in the Ebner Case, and this on the same ground that the decision in the Hurni Packing Co. Case is an authority against it.

[3] This brings me to a consideration of the question on principle. As introductory to such consideration, it will be helpful to first come to an understanding as to how a policy of insurance, or any other contract not involving real estate, may be rescinded for fraud in the obtaining of it and what is the effect of a rescission thereof. What I have in mind is not a judicial rescission, but one "in pais." It may be stated that it may be so rescinded by the act of the party defrauded, and that without the consent of the defrauding party. The act by which the rescission is effected is the tender back by the defrauded party of what he received under the contract in name of rescission and demand of the return of what the defrauding party received. The effect of a rescission in this way is to bring the contract to an end. This whole matter is so fully and clearly dealt with in Bigelow on Fraud, volume 1, beginning at page 75, that it is not necessary to consult any other authority. He says:

"Fraud in contract * * * is consistent with the existence of the contract, though no contract, or no such contract, might have been made, had the party wronged known the truth. * * * In technical language, the contract is said to be 'voidable, not void,' an expression, however, that must be understood only as a very convenient short and free rendering of the law, for it is obviously impossible to make what has been done really void, and the distinction may sometimes be important."

Such being the case he says:

"Because of the fraud the injured party may in certain cases terminate it and require a restoration of the status quo."

And again:

"Hence we have said that the party injured may 'terminate' the contract and 'require a restoration.' "

He proceeds:

"Something must then be done by the party defrauded before the contract can cease to be binding; when that something has been done, and the engagement has been terminated, the contract is said to have been 'rescinded,' and the process by which such result is effected is called 'rescission.' And this is the peculiar and characteristic remedy, though not the only remedy, as we have seen, for fraud in contract. It is peculiar, in that it seeks, not reparation, like an action for damages, but restoration; so that it is specific performance reversed, the literal undoing, as far as may be, of the contract."

He then relates rescission to cancellation and points out that they are not the same. He says:

"It is not the same thing as cancellation, even though a written instrument is concerned; for cancellation is a remedy, not only against the written evidence of contracts, but against instruments which are not contracts at all or are contracts only in point of form, as in the case of a forged promissory note."

In a note to this he says:

"An instrument may, of course, be canceled for fraud as well as for forgery; but, if the instrument to be dealt with is actually a contract, the proceeding is properly termed rescission, though cancellation may be added."

He then points out that there are "three classes of cases in which rescission may be effected, each having a mode of its own." They are "rescission in pais," "judicial rescission," and rescission by plea (or

answer)." As to how rescission in pais, which is the only class with which we are concerned here, is effected, he says:

"Rescission in pais, as the term implies, is effected by act out of court. It is the remedy for fraud in contracts of sale and the like. A sale has been made, and something of value has thereby been received by the defrauded party, whether vendor or purchaser it matters not; and this must, before suit, be tendered back to the wrongdoer, in the name of rescission— i. e., with demand of return of what the wrongdoer has received. The object of the tender is to effect restoration of the status quo; and in this class of cases it is a condition precedent to rescission."

With this contact with fundamental notions, so finely stated, we are in position to deal with the question in hand from the point of view of principle. That question is whether, if a policy of insurance has been rescinded for fraud in the way thus pointed out, during the period of contestability, may not such rescission be relied on as a ground of a suit in equity to cancel the policy, brought after the expiration of such period, or may it be pleaded as a defense to a suit brought on the policy after the expiration of such a period? It seems to me that it is hardly necessary to do more than state this question than to come to the conclusion that the incontestability clause is not in the way of the bringing of such a suit or the making of such a defense. The question answers itself. There is nothing in such clause that is in the way of a policy in such a case being rescinded; i. e., brought to a termination in such a way. That clause has nothing to do with what may or may not be done during that period. It only deals with what may not be done after the lapse of that period. Can it be possible that such clause, which does not inhibit such a termination of the policy of insurance during such period, does inhibit its being availed of after the lapse of such period? Such a position—i. e., as to the termination of the policy by rescission, taken in a suit to cancel, or in an answer to an action to recover on the policy—cannot really be said to be a contest as to the policy; i. e., as to its validity. It is merely a claim that it has come to an end and that, even though such claim is based on the voidability of the policy, entitling the insurer to bring it to an end.

What is sought is not an avoidance of the policy. It has already been avoided during the contestable period, and what is relied on is that it has already been so avoided. If, by virtue of any provision in the policy, it should come to an end, even after the lapse of the contestable period, it can hardly be contended that the incontestability clause is in the way of relying on such termination. Or, if it has come to an end during the contestable period, by rescission for fraud, and the insured has accepted the premiums tendered back, it certainly would not be claimed that, after the lapse of such period, suit might not be brought to cancel it, or an action on the policy might not be defended against on this ground. But such acceptance is not essential to a termination of the policy. It comes to an end by the mere tender of the premiums in the name of rescission and demand of a return of the policy. What the clause has to do with is the voidability or avoidance of the policy after the expiration of the contestable period. It has nothing to do with whether the policy has come to an end, during such period, even though such termination may be based on the voidability of the policy, and such

termination can be relied on aggressively or defensively after the expiration of the period.

This conclusion is not against, but in line with, the purpose intended to be served by the incontestability clause. It is to prevent the postponement of litigation as to the validity of the policy, not only until after the death of the insured, but until after the lapse of a short period after the execution of the policy. In other words, it is to enable the insured to have a hand in such litigation, and that shortly after such execution. In case the insurer takes steps to rescind the policy on the ground of fraud, such as will bring about its rescission within the contestable period, the insured does not have to wait until the insurer brings suit to cancel the policy based upon such rescission. He can at once take steps to bring the matter to a head by initiating litigation himself. If the insurer is in the wrong—i. e., if the policy was not in fact obtained by fraud—such attempt at rescission is, as said in the American Trust Co. Case, "a breach by renunciation" of the contract of insurance. In such a case the insured does not have to wait until the policy becomes payable by its terms before bringing suit. He can bring suit at once. He has two remedies. They are thus stated in Day v. Conn. General Life Ins. Co., 45 Conn. 480, 29 Am. Rep. 693:

"Thus it would seem that a person situated as the plaintiff was may choose between two remedies: (1) He may elect to consider the policy at an end; in which case, with a declaration containing proper averments, he may recover the equitable and just value of the policy. * * * Of course such a case should depend upon the question whether the policy was rightly declared forfeited. If it was, the plaintiff cannot recover; if it was not, he will recover the full value of the policy. (2) If he desires that the policy shall continue, he may institute a proceeding to have it adjudged to be in force, in which case the question of forfeiture may be determined. In that case the rights of the parties will be determined in a reasonable time, the parties will be relieved of suspense, and if it is decided against the forfeiture both parties will have what they originally contracted for."

To the same effect is 14 R. C. L. p. 1014. I must conclude, therefore, that the incontestability clause in the policies involved herein is not in the way of the plaintiff being entitled to the relief he seeks.

[4] It is suggested that there is no equity in the bill and the decision in the McIntyre Case is relied on to support this suggestion. In that case, however, the insured had died, and the policy had become payable. It seems to have been thought that, because the insurer would in a short time have an opportunity to set up its claim in defense to a suit on the policy, there was no jurisdiction in equity of a suit by him to cancel the policy on the basis of such claim. Here, however, the insured was alive at the time this suit was brought, and it was to his interest to have it brought, so that he could be heard on the question as to whether the policies were obtained by fraud, as he has been by deposition taken de bene esse in this cause. The plaintiff had no remedy at law; and there would seem to be no room to claim that this case does not come within the well-recognized jurisdiction in equity to cancel instruments of writing. It clearly does not come within the decision in the case of Cable v. United States Life Ins. Co., 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188.

The motion to dismiss is overruled.