## ROSE et ux. v. MUTUAL LIFE INS. CO. OF NEW YORK.

Circuit Court of Appeals, Sixth Circuit. May 12, 1927.

No. 4527.

1. Insurance ⊚⟶310(1)—Misrepresentations material to risk render life policy voidable only at election of insurance company.

Misrepresentations material to risk, made in obtaining life policy, do not render it void, but merely voidable, at election of insurance company.

2. Insurance ⊚⟶400—Life insurance contract cannot be rescinded at election of insurer by declaration of fraud of insured, made before expiration of contestable period.

Contract of insurance cannot be rescinded, at election of insurer, on its mere declaration of fraud on part of insured, made before expiration of contestable period, so as to permit suit to cancel policies after expiration of such period.

3. Insurance ⊚⟶400—Court's finding of fraud in procuring life policy does not relate back to date insurer notified insured of rescission before expiration of contestable period.

Life insurance company's notice of rescission for fraud and tender of premiums paid, made before expiration of contestable period, did not rescind policy as of such date, on later finding of fraud by court.

4. Insurance ⊚⟶400—Insurer's notice of rescission for fraud and tender of premiums paid was not "contest," within clause providing for contestable period.

Life insurance company's notice of rescission for fraud and tender of premiums paid was not contest, within meaning of clause providing policy was incontestable after two years, since "contest" is action taken in tribunal having right to determine policy's validity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contest.]

Denison, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by the Mutual Life Insurance Company of New York against Grover C. Rose and wife. Judgment for plaintiff (294 F. 122), and defendants appeal. Reversed.

J. J. Greenleaf, of Richmond, Ky. (Burnam & Greenleaf, of Richmond, Ky., and L. L. & G. C. Walker, of Lancaster, Ky., on the brief), for appellants.

Helm Bruce, of Louisville, Ky. (Wm. Marshall Bullitt, of Louisville, Ky., Frederick L. Allen, of New York City, and Bruce & Bullitt, of Louisville, Ky., on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. This is a suit to cancel two life insurance policies issued to Grover C. Rose: One for $3,000, dated July 25, 1919; and the other for $2,000, dated August 14, 1919. Annie P. Rose, the wife of the insured, was named beneficiary in both policies. The bill was filed December 26, 1922, and alleged that Rose, in applying for the policies, made materially false statements and representations, upon which the insurance company relied in issuing the policies; that after learning of the misrepresentations the company, on April 14, 1921, "rescinded and canceled the policies," and tendered to Rose the premiums theretofore paid, with interest thereon from the dates of payment, notifying him of its reasons for the cancellation. The prayer was for a cancellation, a discharge from all liability, and the enforced delivery to the insurance company of the policies. In a motion to dismiss the bill defendants relied upon a clause in each of the policies as follows: "This policy shall be incontestable after two years from its date of issue, except for nonpayment of premiums."

It seems to be conceded that this clause is not only a time limitation on defenses that could be made to a suit brought on the policies, but a like limitation on affirmative action looking to their cancellation. The question is whether the notice of rescission by the insurance company and the tender of premiums theretofore paid terminated the policy, or, if not, was a contest within the meaning of this clause, or at least such action as made the clause inoperative as a bar to an action to annul the policies, brought more than two years after they were issued.

[1, 2] Misrepresentations material to a risk do not render a policy void, but merely voidable at the election of the insurance company. The plaintiff does not claim that there is any provision in these policies giving to it the right to rescind them without the consent of the insured, but insists that an insurance company, by denouncing a policy as fraudulently procured and offering to return the premiums theretofore paid, may terminate or rescind it, and that as a result of its notice and tender of April 14th a rescission of these policies was effected as of that date.

In support of this contention counsel cite Bigelow on Frauds, p. 73, and Williston on Contracts, § 1370, to the effect that if the defrauded vendor or purchaser of personalty, upon tender of restoration of the status quo, can regain possession of his goods "peaceably without the aid of a court," or by entering "the wrongdoer's property, if not forbidden," he may do so, and thereby revest himself with title; he may also, of course, bring replevin. The older cases upon which these pronouncements are based do not, we think, justify the broad application that plaintiff has given them. In Wheelden v. Lowell, 50 Me. 499, the defendant, having been defrauded in the exchange of a horse for a note, after tender of the note entered plaintiff's premises "peaceably and without being forbidden," and took the horse, thereby, as the court held, revesting himself with the title. There was in that case a practical rescission, a retaking of possession. Parrish v. Thurston, 87 Ind. 437, Brower v. Goodyer, 88 Ind. 572, and Doane v. Lockwood, 115 Ill. 490, 4 N. E. 500, were actions in replevin. In discussing the effect of an election to rescind and a tender of the property received in the last-mentioned case, the court stated plaintiff's position perhaps as favorably as it can be stated, as follows: "It is as though no sale of the property had been made, and in that event the original taking will be regarded as a tortious taking without the consent of the vendor, and the title at once becomes reinvested in him, as though it had never been divested." Aside from viewing this language in the light of the fact that the defrauded party had repossessed himself of the property, it is to be considered in connection with the later case of Powell v. Mutual Life Insurance Co., 313 Ill. 161, 144 N. E. 825, 36 A. L. R. 1239, where the same court rightly held, we think, that a contract of insurance could not be rescinded at the election of the insurer, upon its mere declaration of fraud on the part of the insured, saying: "Mere notice of rescission for fraud settles nothing. * * * Charging fraud and serving notice of rescission cannot, of itself, be a rescission for fraud. It still remains to be proven whether or not fraud in fact exists. By notice of rescission for fraud the insurer raises an issue of fact, and whether the policy is still good or is canceled depends upon the decision of that issue. The law recognizes but two ways of settling issues of fact. They are by stipulation, admission, or agreement, and by proof adduced before a legal body competent to find the fact." See, also, Humpston v. Mutual

Life Assurance Co., 148 Tenn. 439, 256 S. W. 438, 31 A. L. R. 78.

[3] The gist of plaintiff's contention is that, notwithstanding the refusal of the insured to rescind, the equivalent of a denial of fraud, the effect of the notice and tender was not only to terminate, but to rescind the policies as of that date, upon the later finding of fraud by a court, if there should be such a finding. This is but another way of saying that the adjudication would relate back to and become effective as of the date of the notice. The logic of that point of view, we think, is that the latter contingency is the efficient and determining factor, and unless and until it is brought about there can be no rescission. The supposed defense of rescission or cancellation by mutual agreement, and the counterplea of fraud in avoidance of a claim of settlement for personal injury in an action to recover damages, do not, in our opinion, present analogous questions. The defense of rescission by mutual agreement would, of course, be good, as would a defense founded on a judgment canceling the policy, in either of which cases there would have been action instantly and finally canceling or rescinding the old agreement. Such defenses have no relation to an incontestable clause; they are always open, if there has been in fact a cancellation or rescission—not action that might or might not justify a judicial rescission. Whether fraud could be relied upon by the insured after the lapse of a time limitation in a policy as a counter defense to a claim of cancellation by mutual agreement is a question not presented, and, if presented in the supposed case, would not concern itself directly with the policy but with an agreement canceling it. The question that we are considering is whether the notice was a rescission, or was merely an election on the part of the plaintiff to avail itself of its right of rescission. If it was a rescission, a finality, this action is maintainable; if it was not, then its effect under the limitation clauses must be considered. It is to be remembered, however, that there is a marked difference between the right or election to rescind and rescission itself. The right may exist and never be exercised. It can be exercised so as to accomplish rescission without the volition of the other party only through the channels of a judicial tribunal, where upon the judgment of rescission there is the coerced consent of the opposing party.

In the other class of cases cited fraud is usually pleaded in avoidance of the affirmative defense of settlement, and the question is tried out, just as a plea of fraud to a suit

on an insurance policy is tried. The plaintiff in that case usually sets up the settlement in his petition, claims that it was fraudulently procured, and tenders back what he received; but that, as the courts hold, does not terminate the contract of settlement. It is but the performance of a condition upon which he may ask for a rescission or an avoidance of the affirmative defense of settlement. Something else must happen; there must be a finding of the fact of fraud; if that is not done, the settlement stands; if it is done, the contract will not be enforced or permitted to stand in the way of the prosecution of a meritorious claim. There is in such case no rescission at all until and unless a competent tribunal adjudges it. Notice of repudiation of or election not to be bound by a voidable contract, with an offer to place the other party in statu quo ante, is ordinarily required as a condition precedent to the maintenance of a judicial proceeding for annulment. Such action does not and cannot of itself terminate a contract finally against the consent of the other party.

[4] This brings us to a consideration of whether the notice and tender was a contest within the meaning of the clauses in question. On that point plaintiffs' position is supported by but two authorities, one of which is Insurance Company v. McIntyre (D. C.) 285 F. 570, wherein it was said that a contest "could be effectually inaugurated by a denial of liability in any form." The judgment in that case, however, was subsequently reversed in (C. C. A.) 294 F. 886, where it was held, following the Pickering Case (C. C. A.) 293 F. 496, that a declaration no longer to be bound under the policy, accompanied by a tender of the premiums paid, was not a contest, within the meaning of a clause like the one involved in this case. The other case is the Hurni Packing Case (C. C. A.) 280 F. 18, where a claim was made on the insurance company after the death of the insured, and it was stated in the opinion that a refusal to pay the claim, such as was made by the insurance company in its letter, was a sufficient act of contest. The opposing view was not discussed at length, and the judgment was affirmed by the Supreme Court on the ground that more than two years had elapsed before the act of contest occurred. That court did not refer in its opinion to the point we are considering, and perhaps it was not called on to do so, as presumably the case was argued, as decided, on the other point; it being assumed that the denial of liability was an act of contest. The weight of authority is to the effect that contest, within the meaning of clauses of this kind, means some affirmative or defendsive ac-

tion taken in court. Northwestern Mutual Life Insurance Co. v. Pickering (C. C. A.) 293 F. 496; Jefferson Standard Life Insurance Co. v. McIntyre (C. C. A.) 294 F. 886; Chun Ngit Ngan v. Prudential Insurance Co. (C. C. A.) 9 F.(2d) 340; Powell v. Mutual Life Insurance Co., 313 Ill. 161, 144 N. E. 825, 36 A. L. R. 1239. It has also been held that an equitable proceeding to cancel a policy after the death of the insured is justified, on the ground that, unless permitted, the insurer would lose, under such a clause, its right to contest the policy. Jefferson Standard Life Insurance Co. v. Keeton (C. C. A.) 292 F. 53; Lincoln National Life Insurance Co. v. Peake (D. C.) 10 F.(2d) 366; Jones v. Reliance Life Insurance Co. (C. C. A.) 11 F. (2d) 69. These holdings proceed upon the theory that by contest is meant action taken in a tribunal having the right and power to determine the validity of the policy. We think they are right, in view of which discussion of the other questions is not necessary.

Judgment reversed.


DENISON, Circuit Judge (dissenting). Having reached the conclusion that the question discussed in the opinion of the court is the controlling one, and being unable to agree with the result reached, the importance of the question seems to justify a statement of my reasons for dissent.

Where a life insurance policy provides that it "shall be incontestable after two years," I would have supposed that the limitation period referred to the maturing of the claim, which would for the first time give something to be contested, and that, if death did not create a cause of action until after the two-year period, then a suit on the policy would be incontestable; otherwise, not. The clause does not speak of a contest to be made, but of a right which cannot be contested; it would have seemed (to me) to fix the status of the policy claim—to contemplate a defense continuously existing, not a long continuing burden. However, the contrary has been expressly ruled (Mutual Co. v. Hurni Co., 263 U. S. 167, 176, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102), and this ruling must, of course, be accepted, and to its full extent. This court now goes further, and holds that the insurer must, within the two years, not only initiate a "contest," but it must be a judicial contest; the liability must not only be challenged, but the challenge is ineffective, unless it is made according to a code not mentioned in the contract. Are we compelled to this contract extension?

The answers to the questions whether the

policy was rescinded, and whether it was contested, depend upon the effect to be given to the notice and tender of April 14th. Was this a mere notice of intention, substantially ineffective until some later judicial decision based thereon, or was it presently effective, subject only to a future contingency? The opinion takes the former view.

The law is full of instances of acts which depend for their justification and validity upon the existence of certain facts, and it often happens that the matter is not closed until there has been a later judicial decision as to whether this fact-justification exists; but, when this decision is reached, it relates back to and takes effect upon the act when it was done, and all subsequent steps which depend upon that act are as valid as if their basis had never been in question; they are not made valid by this decision; the decision is in effect that they always were valid.

Either party to a contract may, if there is lawful reason therefor, rescind it, thereby (subject to some limitations) destroying it from the beginning, or may denounce and repudiate it, thereby destroying it for the future. In either case this is his absolute right, not because some court may subsequently approve, but because the facts existed which gave him the right. I understand that the textbooks (not only those cited in the opinion, but perhaps without exception) all take this view of the matter.[1] The illustration of the defrauded vendor is only one instance. Undoubtedly he may declare a rescission and re-take his goods, ex parte, or, if necessary, by replevin. If he proceeds ex parte, his original title, temporarily parted with, is fully reinstated, subject only to be divested, if the vendee should later successfully assert the lack of fraud. This is only a kind of taint upon the vendor's title, which taint may thus develop into a complete decay; but, unless it does, the title is good enough. If the vendor resorts to replevin, he may and commonly does sell the goods over again, and his second vendee gets title, subject only to the contingency that a court later may decide that no

rescission-justifying fraud existed. In such later litigation, the question is not, "Shall this sale be now rescinded?" It is, "Was this sale effectively rescinded by the vendor's action?"

It is sometimes said that, as it takes two to make a contract, it takes two to rescind it. In a broad sense I think this fallacious, because one party can rescind if he has good ground for it, though, in a narrower sense it may be correct, because, in the illustration just used, we may well say that the vendee gives cause for rescission and practically, looking into the future, gives his implied consent thereto, and indeed tenders it, when he commits the fraud; the vendor upon discovery accepts the tender, and the court's later decree does not confirm any unilateral rescission, but declares the effect of the combined conduct of the two parties.

Coming for further illustration to the repudiation of an executory contract in which the vendor is to continue to make and ship, and the vendee is to continue to receive and pay for: Either party may be guilty of conduct which justifies the other in repudiation and termination, and, if the facts justify him in this step, he may thereafter proceed upon the theory that the contract is ended. He may buy from another or sell to another, but he does so subject to the contingency that the court may later decide against him as to the essential fact. Here, also, I understand that, if there is no acquiescence, litigation goes on, and if the judgment is in his favor, all his acts in disregard of the contract prevail, not as of the time of the judgment, but as of the time when they were done, because the judgment merely is that at that time they were rightfully done.

The language of the present contract has a bearing. Such a contract usually says, "This policy shall be void if." It does not say that, in such event, the insurer may maintain or defend some legal proceeding. True, "void" would mean "voidable by election"; but, after the election is rightfully exercised, the policy becomes and is "void." We may at least say that the line of cases holding that resort must be had to equity to effect a rescission of sealed instruments for certain frauds (see Southern Ry. v. Clark, infra) could not apply to contracts expressly stipulating their invalidity, if that same fraud had occurred.

With all deference, I think the case of a supposed rescission by mutual consent does present an analogous question. As to such a rescission, the dispute may be whether it was in fact made, or whether it was procured by fraud. If of the first character, the insurer

---

[1] Bishop on Contracts (2d Ed.) § 679; Black on Rescission and Cancellation, § 578, citing Cunningham v. Pettigrew (C. C. A. 8) 169 F. 335, 341: "Rescission is a fact, the assertion by one party to a voidable contract of his right (if such he has) to avoid it, and when the fact is made known to the other party [with necessary tender] whether by suit or in any other unequivocal way, the rescission is complete." See, also, section 579.

Parsons on Contracts, § 679 (note a); § 681, note (Ed.); 832 (9th Ed.); Wald's Pollock on Contracts (3d Ed.) p. 706 (note 26), 716 (notes 42, 43).

may insist that there was an agreement to cancel and the insured may deny it. Each party will stand upon his insistence and act accordingly, until the issue is decided by the judgment of the court; but, when decided, the judgment must take effect as of the date of the supposed rescission, and all acts subsequent thereto will stand or fall upon the conclusion that the policy was or was not canceled by agreement on the day in question, and had or had not been in force thereafter. If the dispute about the agreed rescission is of the second character, then by stating it we are only restating precisely the problem here existing. So also, it seems to me, of the illustration of a repudiation or rescission of a contract of compromise and settlement in a personal injury case. If plaintiff claims this contract was fraudulently procured, he may proceed regardless of it. It is the rule in this circuit that, when such contract is presented as a defense, plaintiff may attack it as fraudulent, even though he has filed no bill. Southern Ry. v. Clark (C. C. A.) 233 F. 900, 905. This is because fraud vitiates it; and if it is fraudulent, and if plaintiff elects to repudiate, it is no contract. Its failure as a defense is not because it is judicially set aside; its failure is because it never had any lawful existence.

I see no escape from the conclusion that the effect of the proceeding of April 14 depends upon what the facts were. If there had been sufficient fraud, the company had a right to rescind, and by this notice did rescind. The company had the right to stand provisionally upon that position. The insured had the right to stand upon the position that there had been no rescission because there had been no ground for it. If and when this dispute reached the point of a judicial decision, the issue would be whether, on April 14, the contract had or had not been rescinded. True, this distinct issue might later be lost sight of, or merged in the continuing right to defend upon the same facts which had justified the rescinding; but this would be, I think, a confusion of issues.

It does not follow that an election to rescind, based upon actual fraud, can be made at any time. Even though an effective rescission, it is also, I think, a "contest," or a fact creating contestability, and it is competent for the parties to agree that any denial of liability, on any ground, or made in any way, must yield to a time limitation; and this they have done by the very broad word "incontestable." A rescission by agreement would not be within the limitation, for that would be, not a contest, but a new contract.

With these views, and agreeing with the District Judge as to the proved existence of sufficient fraud, I must think that the decree below was right; but, even if the contingency attending such a transaction is so great that it ought not to be defined as rescission, I must think that it is at least a "contest," and that, after receiving such a notice, the insured can no longer say that his claims are not under contest. This question the Supreme Court of the United States has never passed upon. It was presented by the Hurni Case. As there had not been any contest, except by this notice of rescission, until after the two years had certainly run, it would have been easy for the Supreme Court to say that this notice was not a contest, and hence it was unnecessary to determine the exact beginning of the limitation period.

The cases cited in the present majority opinion, to the effect that there must be a judicial contest initiated by the insured within the period, do not indicate to me an appealing "weight of authority." A study of all the cases which are cited by counsel to that effect indicates that the doctrine is based on a mere dictum in an early case in the Supreme Court of New York, and that, in most of the later cases cited, whatever is said to that effect was also dictum. The two or three late federal cases which accept the rule as if it were a settled one do not disclose any analysis of the authorities, and the occasional state court cases—like that in Powell v. Mutual Life Ins. Co. of New York, 313 Ill. 161, 144 N. E. 825, 36 A. L. R. 1239—in which the pronouncement is not dictum have, it seems to me, taken a wrong view as to the principle of rescission for fraud.

I find myself in substantial, if not complete, accord with the views of Judge Cochran in (D. C.) 294 F. 122, 132–134.