# CHUN NGÍT NGAN v. THE PRUDENTIAL INSUR-ANCE COMPANY OF AMERICA, A NEW JERSEY CORPORATION.

## No. 1556.

ERROR TO CIRCUIT COURT FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED NOVEMBER 18, 1924.                    DECIDED DECEMBER 11, 1924.

.PETERS, C. J., PERRY AND LINDSAY, JJ.

INSURANCE—*contract and policy—clause of incontestability.*

> When an insurance company within one year from the date of the issuance of a policy notifies the sole beneficiary, the insured being dead, that the policy was obtained by the fraud of the assured, that it repudiates the policy on account of the fraud and that it is willing to return the amount of the first premium received by it and demands the return of the policy, it may in an action brought by the beneficiary after the expiration of one year to recover the amount of the policy defend on the ground that the policy was obtained by fraud, even though the policy contains a clause that it shall be incontestable after one year from its date of issue and even though the company did not within the period of one year institute *judicial* proceedings to cancel the policy on the ground of fraud.

OPINION OF THE COURT BY PERRY, J.
(Peters, C. J., dissenting.)

This is an action at law to recover the sum of $5000 and interest upon a policy of insurance. The policy was issued on May 1, 1922, and the assured died of tuberculosis on February 5, 1923, at Leahi Home, an institution for the care of persons so afflicted. This action by the beneficiary, to recover the amount of the insurance provided for in the policy, was commenced in June, 1924, more than one year after its issuance. The policy sued upon contains a provision that it shall be "incontestable after one year from its date, except for nonpayment of

premium." In connection with his application for the policy the assured represented to the insurance company. that he did not suffer from certain ailments mentioned in the application and in the examination by the company's physician and that he had not within a stated period last past consulted any physician with reference to any such ailment. These representations were untrue in fact. They were material and were relied upon by the examining physician and the insurance company in concluding to issue the policy. The insurance company did not, within one year from the date of the policy, institute any judicial proceedings to test the validity of the policy; but on April 7, 1924, after the death of the assured and within the period of one year from the issuance of the policy, it made a tender to the sole beneficiary named in the policy of the amount which it had received as the first premium from the assured, notified the beneficiary of the misrepresentations of the assured and of the fact that it considered the policy invalidated by the fraud and that it refused to be bound by the policy or to pay the amount of the insurance covered thereby and demanded the return of the policy. In its defense in the present action, the company proved these facts, including the fraud, by undisputed evidence and they were in substance found to be true by the trial court. That court, however, held that, because of the clause relating to incontestability, the fraud could not now be availed of as a defense in this case and gave judgment for the plaintiff for the sum of $5503.33, including principal and interest to date of judgment.

The only question presented by the parties for our consideration on this appeal is whether under the above-recited circumstances the clause relating to incontestability renders it impossible for the insurer to avail itself in this action of the defense of fraud and invalidity. Stated

in another way, the sole question is whether the steps taken by the insurance company within the year were such as to authorize the company to present them by way of defense to the present action brought by the beneficiary.

The rule sometimes referred to in construing policies of insurance, that their language, because it was chosen by the insurer, is in case of ambiguity to be taken most strongly against the insurer is not applicable in this instance because there is a statute in this Territory requiring the inclusion in all policies of life insurance of a clause providing for incontestability after the lapse of two years from their issuance. S. L. 1917, Act 115, Sec. 50, Subd. 3. See, for example, *Ebner* v. *Ins. Co.*, 121 N. E. (Ind.) 315, 319. The language under these circumstances is deemed not to be that of the insurance company.

Another rule of construction, well settled in this jurisdiction, is that the words in an insurance contract "should be given their ordinary and popularly accepted meaning in the absence of anything to show that they were used in a different sense." *Alexander* v. *Home Ins. Co.*, 27 Haw. 326, 328.

In our opinion the steps shown by the undisputed evidence to have been taken within the first year by the insurance company constituted a "contest" of the policy and render the defense of fraud available in the present action.

1. The ordinary everyday meaning of the word "incontestable" leads to this conclusion. Nor is there any difficulty in ascertaining what that ordinary meaning is. The men who, because of the superiority of their knowledge of the English language, were chosen to prepare our dictionaries are all agreed on the subject.

"Incontestable. Not admitting of debate or contro-

versy; * * * incontrovertible; as, incontestable facts or testimony.

"Synonyms: * * * incontrovertible; indisputable; * * * unassailable." Standard Dict.

"Contest. To contend; to contend about in argument, especially in opposition; dispute; challenge; call in question; litigate." Standard Dict.

"Incontestable. Not contestable; not admitting of dispute or debate; * * * incontrovertible; indisputable.

"Our own being furnishes us with an evident and incontestable proof of a Deity.

"Synonyms: Indisputable; indubitable." Cent. Dict.

"Contestable. That may be disputed or debated; disputable; controvertible." Cent. Dict.

"Contestant. One who contests; a disputant; a litigant." Cent. Dict.

"Contest, v. To argue in opposition to; controvert; litigate; oppose; call in question; challenge; dispute; as, * * * his right to the property was contested in the courts." Cent. Dict.

"Incontestable. Not contestable; not to be disputed, called in question, or controverted; incontrovertible; indisputable; as, incontestable evidence.

"Specif., insurance, such by its terms that payment in case of loss cannot be disputed by the company for any cause except nonpayment of premiums;—said of a policy.

"Synonyms: Incontrovertible; indisputable; irrefragable; undeniable; unquestionable." Webster's New Int. Dict.

"Contest, v. To make a subject of dispute, contention or emulation; * * * to call in question; to controvert; oppose; dispute.

"Synonyms: Dispute; controvert; debate; litigate; oppose; argue; contend." Webster's New Int. Dict.

"Incontestable. Incontrovertible; indisputable; not contestable; not to be disputed; that which cannot be called in question or controverted." 31 C. J. 405, 406.

"Contest. The primary meaning of the verb 'to contest' is to make a subject of dispute, contention, or litigation; to call in question; to controvert; to oppose; to dispute. It is further defined as meaning, to defend, as a

suit or other judicial proceeding; to dispute or resist, as a claim, by courts of law; to litigate." 7 A. & E. Ency. L. 78.

None of the dictionaries contains the slightest suggestion that the only correct meaning of the verb "contest" is to litigate in court or to oppose in court and not elsewhere. It can be used as meaning to dispute or oppose in court but that is not its only meaning. One of its well-known meanings is to dispute and to attack out of court. We rely upon these definitions. We believe that they are correct and that the ordinary meaning of the word "incontestable" is "indisputable," "not to be disputed in any way" whether in court or out of court.

2. There is absolutely nothing in the policy to show that the word "incontestable" or its inferential antonym "contestable" was not used in its ordinary acceptation or was used only in its narrower meaning as importing a dispute or opposition or attack *in court*.

3. There is no provision in the policy to the effect that the "contest" which is permitted within the first year shall be by judicial proceedings only. The clause of incontestability was doubtless drawn by the ablest lawyers available to insurance companies—men who know the English language well and who were aware of the ordinary definitions given to the words "incontestable," "contestable" and "contest" in the dictionaries. When under these circumstances they saw fit to provide simply that after a stated period the policy should be "incontestable" without specifying that within that period the policy would be contestable *by judicial proceedings only,* the inference is certainly of the strongest that no such limitation was intended upon the methods open to the company within the period for contesting the policy.

4. The origin and the purpose of the clause of incontestability in policies are not open to doubt. Prospective

applicants for insurance learned from the experience of
those who had gone before them and from the frequency
of attacks by insurers upon policies after the death of
the insured, that after all there was not a great degree
of certainty that after their deaths and after their self-
denial for long periods of years in the payment of pre-
miums the assurance of financial aid which was thought
to be thereby conferred upon their children or other bene-
ficiaries would be actually effectuated. Because of this
uncertainty applications for policies became less frequent
than could be desired by the insurance companies, hence
the inclusion of clauses such as the one now under con-
sideration whereby the companies waived the right which
had been theirs to attack the validity of policies (except
for one or two very limited causes) after the expiration
of a short period, usually one or two years. This waiver
brought to applicants the assurance that if an attack
upon the policies for fraud or for causes other than the
excepted ones was to be made it would be made within
the very short period agreed upon and probably within the
lives of the applicants and certainly while the evidence ·
contradicting the alleged fraud or other ground of attack
relied upon was still in existence and easily available
to the insured or, in the event of his early death, to his
beneficiaries. They could rest assured that such an at-
tack, necessarily prompt, would be brought to their
knowledge so that preparations could be made by them
to meet it, either by judicial proceedings to perpetuate
the evidence available or by a suit in equity to establish
the validity of the policy or by an action at law to re-
cover the value of the policy at the time of the repudia-
tion or by an action at law to recover the total amount
of insurance after the death of the insured or by ac-
quiescence in the repudiation, acceptance of the premium
returned and the securing of insurance from some other

company. This history is recognized and these purposes are fully subserved by reading the permitted contestability (within the prescribed period) as referring to a contest or dispute *in pais* as well as to a dispute or contest in the courts.

5. As the word "incontestable" is undoubtedly used in the policy as meaning indisputable "in any way whatsoever," i. e., in court or out of court, so also the inferential antonym "contestable" means disputable by any or every method which constitutes a dispute or attack, i. e., in court or out of court.

6. The clause of incontestability relates to what may not be done after the prescribed period and does not attempt to prescribe what may be done within that period. As to the latter, the rights of the insurer are as broad as they would have been if the clause of incontestability were not in the policy. Without that clause those rights for the first year would certainly have included the right to dispute or attack out of court as well as to dispute or attack in court.

7. There is nothing in the requirement that after one year the policy shall not be contestable which prescribes or indicates *how* it may be contested within the year. Even the advocates of the sole judicial contest theory do not claim that the judicial proceedings must terminate in a decree or decision within the prescribed period. According to their view the filing of the suit and the service of summons on the last day of the prescribed period would constitute a contest such as would satisfy the requirements of the policy. If this is so, and undoubtedly it is, then the only purpose which could possibly be subserved by the mere institution of the judicial proceedings would be that the contest was *commenced*, that notice was thereby served upon the insured or his beneficiary, within the prescribed time, that he had a contest

upon his hands and that he must ascertain, if he will, what evidence is available to him and preserve it and perpetuate it as far as possible if he does not acquiesce in the repudiation. All of these purposes are as well served by a contest or dispute out of court as by the judicial proceedings. If litigation after the expiration of the one year is not in violation of the policy, as it is not, merely because the judicial proceeding was instituted within the one year, then so also litigation after the one year is not in violation of the policy where it is in continuance or development of the contest *in pais* which was started before the expiration of the period. Of course, by the clause as to incontestability it was not contemplated by any of the parties to this contract that litigation after the one year could not be had. It is always possible for parties to litigate although it is not always possible for them to succeed; and it is permissible and correct that there should be litigation after the prescribed period to establish rights which accrued and became fixed within the period.

8. Under the very clause of incontestability now under consideration it is entirely clear that the policy is contestable, for non-payment of premiums, even after the first year. Do advocates of the opposing theory mean that after the first year the only way in which the company can "contest" the policy is judicially? Such a contention would be wholly unsupportable. A repudiation by acts and words out of court would clearly suffice, throwing the burden upon the beneficiary or the insured, as the case might be, of suing if he wished to do so. If this is so in the respects in which the policy is contestable after one year, why is it not equally so in the respects in which it is contestable during the first year? We think that it is.

In holding as we do, we appreciate that in point of

numbers the authorities are overwhelmingly against us; but with all respect, we think that, in reason, they are not.

The case of *Mut. Life Ins. Co. of New York* v. *Hurni Pkg. Co.,* 263 U. S. 167, is cited by the insurance company as sustaining its contention. If it were a decision on the point, our duty in the case at bar would be greatly simplified but we cannot find that in that case the court expressed any view upon the point now under consideration. What it held was that the "date of issue" referred to in the clause of incontestability in the policy then before the court was the one specified in the policy "although this (by agreement of the parties) was earlier than the dates of actual execution and delivery,"—a question entirely different from that now before us.

In the same case upon a second trial (280 Fed. 18, 20) the lower court said: "We are equally of opinion that a repudiation of the claim of defendant in error" (the beneficiary) "such as that made in the letter of August 24th" (the steps taken by way of repudiation were wholly out of court) "was a sufficient act of contest, and that court proceedings were not essential to the assertion of the right, as counsel for defendant in error contend." While this is an adjudication in favor of our construction of the policy, the reasoning which moved the court is not set forth in the opinion.

The only well-reasoned opinion which has come to our attention in support of the view that a non-judicial contest within the prescribed period will suffice to protect the rights of the insurance company is that of Judge Cochran of the United States District Court, reported in *Mut. Life Ins. Co. of New York* v. *Rose,* 294 Fed. 122, at pages 132, 133 and 134. In that case the insurer after the expiration of the period named in the incontestability clause brought suit to cancel the policy on the ground of

fraud. Within the time limited it had repudiated the policy, tendered the premium to the insured and demanded a return of the policy. The suit was brought in the lifetime of the insurer. The question as stated by the court was, "whether, if a policy of insurance has been rescinded for fraud in the way thus pointed out, during the period of contestability, may not such rescission be relied on as a ground of a suit in equity to cancel the policy, brought after the expiration of such period, or may it be pleaded as a defense to a suit brought on the policy after the expiration of such a period?" The question was answered by the court in the affirmative. It may be that in one respect as to the facts that case differs from the case at bar, for in that case the tender of the premiums already paid was made to the insured himself and from him the return of the policy was demanded. In the case at bar the tender would seem to have been made to the wrong party. The estate of the decedent and not the beneficiary of the policy was entitled to a return of the premium. Nevertheless it is far from clear that a tender of the premium was necessary in the case at bar in order to constitute a rescission *in pais* by the act of one party alone, to wit, the insurance company. A tender to the beneficiary certainly was not necessary, because she was not entitled to it. A tender to the administrator was probably not a prerequisite to a rescission as against the beneficiary, particularly in view of the undisputed evidence that by its acts the insurance company made clear that it was not endeavoring to retain the premium while cancelling the policy. It was obviously anxious to return the premium to the person entitled to it. Again, it does not appear from the record that any administrator of the estate was ever appointed and in the absence of such an appointment there could be no tender to anyone representing the estate of the decedent. If a

tender to the beneficiary was not under the circumstances of this case a prerequisite to a completed rescission by the insurance company alone, the *Rose* case is parallel in its facts to the case at bar. However that may be and even assuming that a tender was an essential prerequisite and that there was no completed rescission by the insurance company, nevertheless it remains true that the *Rose* case is a direct authority to the effect that a non-judicial contest within the year will suffice to meet the requirements of the policy and will justify the insurance company in pleading that contest as a defense to an action upon the policy brought by the beneficiary after the lapse of the prescribed period. The court held, after a careful consideration of the facts and the law, that the steps taken by the insurance company within the year, to wit, the tender, the repudiation on the ground of fraud and the demand for the policy, while they were admittedly not a judicial contest, nevertheless constituted a "contest" and were available in defense to the action at law brought by the beneficiary after the prescribed time limit.

Once it is held or admitted that *some* acts out of court may constitute a contest within the inferential contestability provision of the contract then the judicial nature of the dispute can no longer be said to be the boundary or line of demarcation between a sufficient contest and an insufficient contest. One set of facts *in pais* is just as good as another set of facts *in pais* provided it constitutes an attack on the policy or a dispute. In this connection it must always be borne in mind that the ultimate test to be considered is not whether there has been a "rescission" but whether there has been a "contest." The word "rescission" does not appear in the clause under consideration or anywhere else in the contract in connection with this same subject. The fact that the company had gone so far in the *Rose* case as to make alone a com-

pleted rescission and cancelation of the fraudulent contract was a good reason for holding that the company had contested the validity of the policy within the prescribed period; but it does not follow that such a completed rescission is an indispensable and the only method of constituting a contest *in pais*.

A few comments will now be made with reference to the authorities holding that a judicial contest alone will suffice to protect the insurance company.

A writer in the Central Law Journal, Vol. 97, No. 3, after a review of the cases summarized his own reasoning in these words: "To give the word 'contest' the meaning insisted upon by the companies would be treating it as if the word 'dispute' had been used instead. The courts will not attribute to the parties, in the selection of the language used in the clause, a futile or a useless purpose. The clause certainly was intended to mean something and was intended to be enforced. Certainly there would be no means of enforcing the contract if the word 'contest' means 'dispute.' No one could prevent the company, notwithstanding its contract, from disputing liability. * * * since contracts may only be enforced by the courts, * * * it is logical to conclude that the parties * * * had in mind a contest in a court of competent jurisdiction." The weakness of this reasoning is that it is equally true that if "contest" means only a *judicial* dispute, no one could prevent the company from instituting judicial proceedings and thus disputing liability.

Many of the courts base their construction of the clause in whole or in part upon the statement that the clause is "a statute of repose and limitation." To a certain extent, it is; but only to the extent indicated by the language of the provision. In other words, the mere thought that the provision was intended as an assurance

of repose and limitation of the company's rights does not throw light upon the meaning of the words "incontestable," "contestable" or "contest." Under our view, as well as under the opposing view, the clause is similar to a statute of repose and limitation. By it, under our view, the company waives and abandons certain rights of dispute which it otherwise would have had beyond the prescribed period and is compelled to ascertain whether or not the policy was secured by fraud and to make its contest or dispute of the policy and necessarily to inform the insured or the beneficiary, as the case may be, of its repudiation, opposition and attack upon the policy,— all within the time limited. In other cases, as for example, *Am. Trust Co.* v. *Life Ins. Co.,* 92 S. E. (N. C.) 706, 711 and *Thistle* v. *Ins. Co.,* 261 S. W. (Tenn.) 667, repudiation, notice and tender, not acquiesced in by the insured, were held not to constitute a rescission or cancelation. It is there said that it takes two to rescind or cancel a contract and that if two will not agree to a rescission, then the only recourse is to a judicial tribunal having jurisdiction to annul and that, therefore, a judicial proceeding must be instituted by the insurer within the period of contestability. These arguments presuppose that a rescission is an essential part of a contest or at least proceed on the theory that the test is whether there has been a rescission rather than whether there has been a contest. It would seem to be too obvious to require further comment that a rescission is not an essential ingredient of a contest. In a contract for the sale of goods, payment is demanded. It is refused, not on the ground of fraud but on the sole ground that the purchase price has already been paid in full in coin. Under a building contract demand is made for the erection of servants' quarters. Performance is refused, not on the ground of fraud, but on the sole ground that such erec-

tion is not required by the terms of the contract. In neither instance is there a rescission and yet in both instances the contest is on in full force whether the refusal is conveyed by mere words out of court or in a formal answer in court. Moreover it does not always take two to effectuate a rescission of a contract for fraud. One alone can do so as pointed out by Bigelow on Fraud in passages quoted by Judge Cochran in *Mut. Life Ins. Co.* v. *Rose, supra,* at page 132.

Other decisions, like that in *Insurance Co.* v. *Cranford,* 257 S. W. (Ark.) 66, are based solely upon precedents, upon the plea that there should be uniformity in policies of insurance both in form and in the interpretation of the language given. The authorities in favor of the judicial contest view are not in any proper sense to be regarded as a rule of property and if they are in error there is no good reason why the error should not now be departed from and correct principles adopted.

In a number of cases it is said that under the clause of incontestability, the insurance company must within the time limited make a defense to an action on the policy "or take affirmative action,"—without defining what that affirmative action should be. We do not understand that this is in itself a statement of any reason for holding that the contest required can be a judicial one only. It is at most a statement of that conclusion. If by affirmative action is meant any action in court or out of court, we agree with the statement; but if, as is probable, affirmative action *in court only* was intended, we think that the conclusion is incorrect, for the reasons outlined above.

Still other cases, like that in 203 Pac. (Okl.) 192, held that the word "contest" presupposes that the struggle will be before some tribunal with power to determine it and dispose of it. We do not understand this to be an

element in the meaning of the word.   None of the lexicographers speak of it as a necessary element while all recognize by the meanings given that the word can refer to and include a contest or dispute out of court as well as a contest in court before a tribunal with power to decide it.   To hold that under the policy before us in all cases of contestability the contest shall be had before a judicial tribunal would be adding to the policy a term or a condition not now contained therein.

In other instances, as for example, in the same Oklahoma case last referred to, it is said that the insurance company is not sole judge of the falsity of the answers or of the question whether a fraud was committed upon it by the assured and that, therefore, a judicial decision is necessary and a judicial contest is contemplated.   Undoubtedly the insurance company is not the sole judge of the falsity of the representations made to it by the insured.   That is as true when the claim or defense of fraud is presented in a judicial proceeding as it is when the claim is made out of court.   Whether the insurance company makes its claim by bill in equity or by defense of an action at law or by steps taken out of court by way of repudiation of the policy, it is not attempting in any of those instances to set itself up as the judge of the fraud.   It is making its claim and in the making of it is presenting a dispute or contest; and that is all that the policy requires to be done within the period stated.

In still other cases, like 257 S. W. (Ark.) 66, 69, it is said that "a contest in law implies an adversary proceeding in which matters in controversy may be settled by the courts upon issue joined."   A sufficient answer to this is to say that the policy does not specify a contest in law and does not specify any particular mode of contest whatever.   All that it says inferentially is that within the period named the policy shall be contestable.

In some of the cases it is said that the purpose of the clause is to force the raising and settlement of any issue (by way of attacking the policy) *during the assured's lifetime* and much is made of the point that after his death he cannot speak. But the contestability within the short period prescribed is not made to depend upon the continued existence of the insured. All of the modern cases are agreed on that point. The short period, whether one year or two years, of contestability is granted and reserved to the insurance company wholly irrespective of whether the insured lives during the whole of that period or dies the day after the policy is issued. The company still has in the latter instance the remainder of the period in which to conduct its investigation and to make its contest. It may have been thought in the framing of the provision that in all probability most of the insured persons would survive the short period named and thus be able to take part themselves in preparing their defense to the charge of fraud; but it was doubtless also thought that even if he died within the period it was only the part of fairness to allow the insurance company at least the time named within which to search for and find the fraud.

There are other cases which are sometimes cited in support of the view more favorable to the beneficiary but which in reality, while deciding other questions of construction, do not decide the question as to what manner of contest within the period will satisfy the requirements of the policy. One of these is *Wright* v. *Mut. Ben. Assn.*, 43 Hun 61, a case which has been often referred to in later cases as the one in which the line of decision began to the effect that by contest is meant a judicial contest only. The case as we read it decides nothing of the sort and confines itself to a consideration and decision of other questions, one being whether the expres-

sion "no question as to the validity" was in terms broad enough to exclude the defense of fraud sought to be established and the other being "whether the provision so construed contravenes any rule of public policy and is for that reason void." The court did say in the course of its discussion of the question of public policy: "The practical and intended effect of the stipulation is, as held by the trial court, to create a short statute of limitations in favor of the insured, within which limited period the insurer must test, if ever, the validity of the policy;" but it did not express itself as to what manner of test would be necessary in such cases. The question of whether certain steps out of court could constitute a test within the meaning of a clause of incontestability did not arise upon the facts of that case and was not in any wise considered by the court.

The judgment is set aside and a new trial granted.

*M. F. Prosser* and *A. E. Steadman* (*Frear, Prosser, Anderson & Marx* and *A. E. Steadman* on the briefs) for plaintiff in error.

*E. H. Beebe* and *Marguerite K. Ashford* (*Thompson, Cathcart & Beebe* and *Marguerite K. Ashford* on the brief) for defendant in error.

### DISSENTING OPINION OF PETERS, C. J.

On May 1, 1922, the Prudential Insurance Company of America issued to Yuen Tai Kan, the insured, its certain life insurance policy of even date wherein it agreed among other things that in the event and upon due proof of the death of said Yuen Tai Kan it would pay to Chun Ngit Ngan, the wife of the insured, as beneficiary, the sum of $5000. The policy contained the following incontestable clause: "This policy shall be incontestable after one year from its date except for non-payment of premium * * *." The insured died February 5, 1923. On April 7, 1923, the agent of the insur-

ance company notified the beneficiary, Chun Ngit Ngan, that it refused to be bound by the policy on the ground of fraud on the part of the assured in its procurement, requested of the beneficiary that she deliver the policy to it for cancelation and tendered her the full annual premium theretofore paid in advance by the assured. The request for cancelation was refused and the tender declined. Subsequent to May 1, 1923 (after one year from the date of the policy), the beneficiary brought an action at law against the insurer for the amount of the policy. The insurer by way of answer to the complaint of the beneficiary, in addition to the allegations of general denial and notice of the defense of fraud, specially answered as follows: "That subsequent to the death of Yuen Tai Kan, named as the insured in said policy of insurance, on the 7th day of April, 1923, and prior to the expiration of one year from the date thereof, defendant notified Chun Ngit Ngan, named in said policy as beneficiary thereunder, that it refused to recognize such policy as valid because of false and erroneous statements made by the assured upon his examination by the medical examiner for defendant prior to the issuance of said policy, and did then and there tender to said Chun Ngit Ngan the entire sum theretofore paid as premium under said policy, which tender was refused by the said Chun Ngit Ngan, and did demand a return of said policy by said Chun Ngit Ngan to the defendant." Trial was had jury waived on April 21, 1924. The beneficiary made out a *prima facie* case. The insurance company offered evidence tending to prove and the court found that the policy had been procured by the assured by fraud. The court, however, found for the beneficiary, holding that the policy by its terms was incontestable after one year from its date and a year having elapsed since the date of the policy the insurance company was foreclosed from

defending against the policy on the ground of fraud and ordered that judgment be entered accordingly.

The insurance company prosecuted error, assigning the following errors: 1. "That the circuit court erred in rendering and filing the decision in the above entitled cause and in holding and deciding as a matter of law that a tender back of the premium of insurance and a demand for the return of the policy coupled with a notification that the defendant refused to pay said policy on the ground of fraudulent and untruthful statements made to the examining physician of the Company, which tender, demand of return of the policy and notification of the grounds therefor, were made to the plaintiff, she being the beneficiary named in said policy, within the contestable period named in said policy, was not a sufficient contest under the terms of said policy and under the law, to which said decision defendant through its counsel excepted, which exception was allowed." 2. "That the circuit court erred in rendering and filing its judgment in the above entitled cause dated the 12th day of May, 1924, as follows:" (Here follows the judgment in stereotyped form.)

No charge of fraud was made against the beneficiary in the procurement of the policy. It is admitted by the insurer that no other action was taken by it to cancel the policy except that of April 7, 1923.

The policy in clear and unambiguous terms prohibits the insurer from contesting the policy at any time after the expiration of one year from its date except for the nonpayment of premium. The full annual premium had been paid in advance so the exception is not involved. The action on the policy was brought by the beneficiary after the expiration of one year from the date of the policy. The answer of the insurer setting up the defense of fraud was necessarily filed after the expiration of one

year from the date of the policy.   Unquestionably the
filing of the answer and setting up of the defense of fraud
by the insurer in an action by the beneficiary upon the
policy constitutes a contest.   Hence the insurer by its
answer is contesting the policy after the expiration of a
year from its date in the face of and contrary to the
express prohibition of the incontestable clause.   Clearly
the insurer is foreclosed from contesting the policy unless
by its acts of repudiation of the policy of April 7, 1923,
it is exempted from the operation of the incontestability
clause.

The purpose of the incontestability clause is obvious.
Fraud vitiates a contract but until some action is taken
by the defrauded party thereto the contract continues in
existence.   The contract is voidable and not void.   It is
upon the discovery of the fraud by the defrauded party
that the necessity of determination arises—whether the
defrauded party will continue with the contract or re-
scind for fraud.   "The party who has been induced to
enter into a contract by fraud, or by concealment or
misrepresentation in any matter such that the truth of
the representation made, or the disclosure of the fact, is
by law or by special agreement of the parties of the
essence of the contract, may affirm the contract, and in-
sist, if that is possible, on being put in the same position
as if the representation had been true.   Or he may at his
option rescind the contract, and claim to be restored, so
far as may be, to his former position within a reasonable
time after discovering the misrepresentation  *  *  *."
Wald's Pollock on Contracts, marg. p. 576, top p. 705.
Until the discovery of the fraud the defrauded party is
not called upon to act.   Hence it is that irrespective of
the period of existence of the contract, if the defrauded
party has been ignorant of the existence of the fraud, his
prior acts of affirmance of the contract do not bar him

from subsequently disaffirming it after the discovery of the fraud. The time of the discovery of the fraud is the turning point in the subsequent relations of the parties. In the absence of an incontestability clause a life insurance policy may be avoided by the insurer at any time so long as the acts of avoidance are taken within a reasonable time after the discovery of the fraud. But where a policy of life insurance contains an incontestability clause the insurance company in effect waives its right of disaffirmance upon the discovery of the fraud if such disaffirmance is not undertaken prior to the incontestability clause coming into effect. Hence the authorities are uniform to the effect that incontestability clauses found in life insurance policies are in the nature of short statutes of limitation limiting the time within which the insurer may contest the policy. "The practical and intended effect of the stipulation is * * * to create a short statute of limitations in favor of the insured, within which limited period the insurer must test, if ever, the validity of the policy." *Wright* v. *Mutual Benefit Ass'n,* 43 Hun (N. Y.) 61 (1887), affirmed 118 N. Y. 237 (post). "While it is true that fraud voids all contracts, it is equally true that it is competent for the lawmaking power to fix a definite time in which an action shall be brought to declare a fraudulent contract void, and a failure on the part of the person defrauded to bring such action within the time designated would have the effect of debarring him from the right to set aside such a contract. While in such cases it is generally provided that the limitations so fixed shall not begin to operate in favor of the party who has committed the fraud until the same has been discovered, the duty is placed upon the party who seeks to avoid the contract on the ground of fraud to make such efforts to discover the fraud as would amount to ordinary diligence in

law. Civ. Code, Secs. 3669, 3711-3785; *Little* v. *Reynolds* (Ga.) 28 S. E. 919, and cases cited. As the law may prescribe such a limitation in which actions shall be brought by the party to be affected, it is also within the power of the contracting parties to agree among themselves upon a period of time which would amount to a statute of limitations, either greater or less than the period fixed by the law. *Telegraph Co.* v. *James,* 90 Ga. 254, 16 S. E. 83; *Brown* v. *Insurance Co.,* 24 Ga. 97; *Melson* v. *Insurance Co.,* and *Maril* v. *Same,* 97 Ga. 723, 25 S. E. 189; *Ritch* v. *Association,* 99 Ga. 112, 25 S. E. 191. The period fixed by law being intended for the benefit of the parties interested in the contract, and for their protection, it is competent for them to stipulate that the time which the law gives them to act shall be shortened, on the one hand, or lengthened, on the other. Parties interested in the contract may waive the benefit of the statute of limitations fixed by the law, the effect of the waiver being either to make a longer or shorter period than the law prescribes." *Mass. Ben. Life Ass'n* v. *Robinson,* 30 S. E. (Ga.) 918, 925 (1898). "Incontestable provisions in insurance policies have been held valid as creating a short statute of limitations in favor of the insured; the purpose of such provisions being to fix a limited time within which the insurer must ascertain the truth of the representations made." *Monahan* v. *Met. Life Ins. Co.,* 119 N. E. (Ill.) 68, 69 (1918). "(1) The plea alleges facts showing that the insured was guilty of intentional fraud in procuring the policy, and the demurrer admits them. It is an elementary rule of law that fraud vitiates all contracts, and therefore the contract was voidable by the company. When the insured died it had a complete defense to any action on the policy which his representative might bring. The only question, therefore, is whether the company was

still bound, after the death of the insured, by the limitation of one year from the date of issue of the policy in which to contest it.    (2) We have held that the provision in a policy of life insurance that it shall be incontestable after one year from the date of its issue, provided the premiums are duly paid, is a valid provision, which bars the insurer from making any defense against the policy, after the expiration of the contestable period, except for nonpayment of premiums, and that after the lapse of that period even fraud in procuring the policy is not available to avoid it.    *Royal Circle* v. *Achterrath,* 204 Ill. 549, 68 N. E. 492, 63 L. R. A. 452, 98 Am. St. Rep. 224; *Flanigan* v. *Federal Life Ins. Co.,* 231 Ill. 399, 83 N. E. 178; *Weil* v. *Federal Life Ins. Co.,* 264 Ill. 425, 106 N. E. 246, Ann. Cas. 1915D, 974; *Monahan* v. *Metropolitan Life Ins. Co.,* 283 Ill. 136, 119 N. E. 68, L. R. A. 1918D, 1196.    This is in accord with the substantially unanimous decisions of the courts which hold that the language admits of no reasonable construction other than that the company reserves to itself the right to ascertain all the matters and facts material to its risk and the validity of its contract for one year; and that, if within that time it does not ascertain all the facts and does not cancel and rescind the contract, it may not do so afterward upon any ground then in existence.    When the execution of a contract has been procured by the fraud of one of the parties, the innocent party, upon discovering the fraud, may still insist upon the contract or may rescind it.    He must, however, if he desires to repudiate it, do so promptly upon discovering the fraud and consistently adhere to his intention.    By delay or vacillation he waives his right to rescind.    The effect of the stipulation in the policy is not to prevent the insurer from annulling the contract upon the ground of the fraudulent representations of the insured, but its

practical and intended effect is to create a short statute of limitations in favor of the insured, within which limited period the insurer must, if ever, test the validity of the policy. *Wright* v. *Mutual Benefit Life Ass'n*, 43 Hun (N. Y.) 61; Id., 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749; *Massachusetts Benefit Life Ass'n* v. *Robinson*, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; *Clement* v. *New York Life Ins. Co.*, 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650; *American Trust Co.* v. *Life Ins. Co. of Virginia*, 173 N. C. 558, 92 S. E. 706; *Murray* v. *State Mutual Life Assurance Co.*, 22 R. I. 524, 48 Atl. 800, 53 L. R. A. 742; *Mutual Life Ins. Co.* v. *Buford*, 61 Okl. 158, 160 Pac. 928; *Metropolitan Life Ins. Co.* v. *Peeler* (Okl.) 176 Pac. 939, 6 A. L. R. 441." *Ramsay* v. *Old Colony Life Ins. Co.*, 131 N. E. (Ill.) 108, 109 (1921). "Payment was refused by the company on the ground that the insurance had been procured by false representations of a material character which had been made by the insured in his application for the purpose of procuring the policies of insurance. No answer was filed to the present suit within one year after the date of the insurance policies, and no suit has been brought by the insurance company to set aside the contract of insurance because it had been procured by fraudulent representations on the part of the insured. Thus it will be seen that the sole issue raised by the appeal depends upon the construction to be given the incontestable clause which is set out in full in our statement of facts. In substance, it provides that the policies shall be incontestable after one year if the premiums are duly paid, except for the violation of the provision relating to military or naval service in time of war. The modern rule is that a life insurance policy containing a provision that it shall be incontestable after a specified time cannot be contested by the insurer on

any ground not excepted in that provision. It is said that the practical and intended effect of such a stipulation is to create a short statute of limitations. By the stipulation the insurance company agreed that it would take a year to investigate and determine whether it would contest the policies of insurance, and that, if it failed within that time to discover any grounds for contesting the same, it would make no further investigation and would not thereafter contest the validity of the policies." *Missouri State Life Ins. Co.* v. *Cranford,* 257 S. W. (Ark.) 66, 67 (1923).

The question therefore arises as to what steps the insurer must take by way of disaffirmance to exempt it from the application of and the limitations imposed by the incontestability clause of an insurance policy so that in the event of a suit by the beneficiary after the elapsation of the first year of the policy there is available to it in such suit the defense of fraud.

The contention of the plaintiff in error is best understood by the following quoted excerpt from its brief: "It is uncontradicted by the evidence and so found by the trial court that the insurer upon learning of the fraud of insured and within a period of one year from the date of the policy, tendered to the beneficiary the premium which had been paid, demanded a surrender of the policy and notified the beneficiary that it did not recognize the policy as a valid contract and elected to rescind said policy because of the fraud of insured in the declarations to the medical examiner. The insurer took, therefore, within a period of one year all of the steps to renounce liability, rescind the contract and put the parties in statu quo which were possible outside of court."

This the plaintiff in error contends was a "contest" which exempted it from the application of the one-year

incontestability clause and was sufficient to permit it, after one year from the date of the policy, to plead the fraud of the assured in an action at law brought by the beneficiary. Plaintiff in error rests its contention primarily upon two cases, namely, *Life Insurance Co.* v. *Hurni Packing Co.*, 280 Fed. 18, and *Met. Life. Ins. Co.* v. *Rose*, 294 Fed. 122.

The *Rose* case depends for its conclusion upon the *Hurni Packing Co.* case and *Jefferson Standard Life Ins. Co.* v. *McIntyre*, 285 Fed. 570. The *Hurni Packing Co.* case contains unsupported dicta to the effect that a letter by the insurer to the beneficiary denying liability was a sufficient contest and that court proceedings were not essential to the right. I do not consider this language persuasive. The court did not deny that some affirmative action must be taken by the insurer to cancel the policy prior to the incontestability clause coming into effect. On the contrary it said: *"Affirmative* action was necessary to the consummation of the inchoate right created by the terms of the policy." But if the effect of the decision is that rescission may be taken personally against the beneficiary exclusive of the legal representatives of the assured the case was in my opinion incorrectly decided. Moreover, if this case holds that rescission by act of the insurer, without the concurrence of the assured, taken prior to the incontestability clause coming into effect, exempts the insurer from the application of such clause, it is contrary to the weight of Federal authority. See *N. W. Mutual Life Ins. Co.* v. *Pickering* (Fifth Circuit Court of Appeals), 293 Fed. 496-499; *Jefferson Standard Life Ins. Co.* v. *Keeton* (Fourth Circuit Court of Appeals), 292 Fed. 53, 54, and *Jefferson Standard Life Ins. Co.* v. *McIntyre* (Fifth Circuit Court of Appeals), 294 Fed. 886, 887, all of which hold in effect that mere repudiation of a policy does not constitute a "contest."

The decision in the *Keeton* case is peculiarly interesting. There as here the policy contained a one-year incontestability clause. There similarly as here rescission by act of the insurer was attempted against the beneficiary after the death of the insured but during the first year of the policy. If such rescission operated to cancel the policy, then the insurer could have within the decision of the *Rose* case availed itself of its rescission at law by way of defense to any action at law that the beneficiary might bring upon the policy. In other words, the insurer had a plain, adequate and complete remedy at law. And yet the court holds that the insurer has not an adequate remedy at law and entertains jurisdiction of a suit in equity for rescission. The reason for equitable interference is perfectly plain—that rescission by act of the insurer did not operate to cancel the policy and restore both parties thereto to their respective *statu quo ante* and that if the beneficiary delayed bringing suit at law until the expiration of the first year of the policy the attempted rescission *in pais* would not be available as a defense. These were the "peculiar circumstances" which rendered *Insurance Co.* v. *Bailey,* 13 Wall. (U. S.) 616, and *Cable* v. *U. S. Life Ins. Co.,* 191 U. S. 288, inapplicable. The applicability of the *Rose* case is discussed later.

In the *McIntyre* case (285 Fed. 570), cited in the *Rose* case, the U. S. district court of Florida held that mere denial of liability by the insurer to the beneficiary on the ground of the fraud of the assured made within the first year of the date of the policy exempted the insurer from the provisions of a one-year incontestability clause contained therein. This case, however, was reversed by the circuit court of appeals of the fifth circuit (294 Fed. 886), where the court said: "A mere denial or repudiation by an insurer of its liability under a policy, ac-

companied by a tender of the premium paid, is not a contest within the meaning of such a provision as the one above set out. *Northwestern Mutual Life Ins. Co.* v. *Pickering*, 293 Fed. 496, in the United States circuit court of appeals, fifth circuit, present term. The provision in a life insurance policy that 'this policy shall be incontestable, except for nonpayment of premiums, provided two years shall have elapsed from its date of issue,' has the effect of making the policy incontestable, on a ground other than the excepted one, by the insurer after two years from its date of issue, though the insured died within that time. *Mutual Life Ins. Co. of N. Y.* v. *Hurni Packing Co.* (November 12, 1923), 44 Sup. Ct. 90, 68 L. Ed. ——. We think that the reasons stated in support of the conclusion reached in the last-cited case are applicable to the provision now in question. The contested policies did not cease to be in force upon the death of the insured. The contracts remained in force, upon the death of the insured immediately inuring to the benefit of the beneficiaries."

The overwhelming weight of authority is to the effect that in order that an insurance company may defend at law against an insurance policy containing a one-year incontestability clause after such clause has come into effect it must have during the first year of the life of the policy taken some step, the immediate or ultimate legal effect of which is to cancel the policy within the first year of its life or to render it within that time of no further force or effect. The majority opinion recognizes the weight of authority but refuses to be guided by it.

The following excerpts from some of the State and Federal decisions are illustrative:

"An action for the recovery of the sum insured not being maintainable until after the death of the insured,

one effect of the stipulation, if valid, is to prevent the insurer from interposing as a *defense* the falsity of the representations of the insured.   But its effect is not to prevent the insurer from *annulling the contract* upon the ground of the fraudulent representations of the insured, provided *an action* for that purpose is brought in the lifetime of the insured and within two years from the date of the policy." *Wright* v. *Mutual Ben. Ass'n*, 43 Hun 61, 65 (1887).   "* * * it recognizes fraud and all other defenses but it provides ample time and opportunity within which they may be, but beyond which they may not be, established.   It is in the nature of and serves a similar purpose as statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds.   It is exemplified in the statute giving a certain period after the discovery of a fraud in which *to apply for redress* on account of it and in the law requiring prompt application after its discovery, if one would be relieved from a contract infected with fraud. The parties to a contract may provide for a shorter limitation thereon than that fixed by law and such an agreement is in accord with the policy of statutes of that character.   (*Wilkinson* v. *First Nat. Fire Ins. Co.*, 72 N. Y. 499, 502.)   No doubt the defendant held it out as an inducement to insurance by removing the hesitation in the minds of many prudent men against paying ill-afforded premiums for a series of years when in the end and after the payment of premiums, the death of the insured, and the loss of his and the testimony of others, the claimant instead of receiving the promised insurance may be met by an expensive lawsuit to determine that the insurance which the deceased has been paying for through many years has not and never had an existence except in name." *Wright* v. *Mutual Ben. Ass'n*, 118 N. Y. 237, 243 (1890).   "It is true that fraud vitiates

all agreements and undertakings based upon it, and they may be· set aside at the instance of the party defrauded. So, in this case, fraud in obtaining the policy would vitiate it at the option and *upon the motion of the party defrauded;* but, under the provision in question, the party must within the year exercise his right *to repudiate and rescind it.* The effect of this agreement not to contest is to put the company in the attitude of being unable to set up any fraud or false swearing in obtaining the policy, or any other defense to it, save the one excepted, so far as its original validity is concerned. Unless the language be thus construed, it is unpractical to put any reasonable interpretation on it. Unless it is the object and purpose of the provision to cut off all defenses arising out of the false statements of the applicant to obtain it, it is difficult to see what practical benefit the insured is to derive from it. It has been well said: 'The effect of the provision is to prevent the insurer from interposing as a defense the falsity of the representations of the insured, which is fraud. But it does not prevent an abandonment, rescission and cancellation of the contract for such fraud provided the *action* for that purpose is brought within a year.' " *Clement v. N. Y. Life Ins. Co.,* 46 S. W. (Tenn.) 561, 562 (1898). "The practical, and evidently the intended, effect of the stipulation in question was to create a short statute of limitations in favor of the insured, within which limited period the insurer must, if ever, *test* the validity of the policy." *Murray* v. *State Mut. Life Ins. Co.,* 48 Atl. (R. I.) 800 (1901). "An examination of the following cases. will show that the holding of the courts of this country has been, *almost universally,* that every defense to a policy of insurance embraced within the terms of the 'incontestable clause' is completely lost to the insurer if it fails to make the defense or *take affirmative action*

*within the time limited* by the policy." *Indiana, etc., Life Ins. Co.* v. *McGinnis,* 101 N. E. (Ind.) 289 (1913). "The admissions in the answer show beyond question the issuance of the policy, payment, and proper tender of payment of the premiums thereon, death of the insured, notice to the company of such death, and refusal of the company to pay such policy, and that more than two years had elapsed since the date of issue of the policy, and the defendant failing to show that within two years from the date of policy that *legal action* had been taken to avoid the policy on account of breaches of the warranties in the application for insurance, or that said policy had been canceled with the assent of the insured, the court properly overruled defendant's demurrer to the evidence, correctly denied motion for a directed verdict for defendant, and properly directed a verdict for the plaintiff.  *  *  *  If the insurer desired to avoid the policy, on the ground of misrepresentations contained in the application for insurance, it should, in the absence of the consent on the part of the insured and the beneficiaries named in the policy, have taken *legal steps* to do so within two years from the date of issuance of the policy, and, failing so to do within two years from the date of the issue of the policy, the policy of insurance was incontestable on the ground of breaches of warranties contained in the application." *Mutual Life Ins. Co.* v. *Buford,* 160 Pac. (Okl.) 928, 930, 931 (1916). "One year is given to the defendant to make inquiry and investigation as to the health of the insured, and as to the statements made in the application and the policy, as an inducement to the contract. Within this time, if the defendant refused to perform its part of the contract and so notified the insured, three remedies are given to the plaintiff: '(1) He may elect to consider the policy at an end and recover its just value; (2) he may sue in

equity. to have the policy declared in force; (3) he may tender the premiums and treat the policy as in force and recover the amount payable on it at maturity.' 14 R. C. L. 1004; *Day* v. *Ins. Co.*, 45 Conn. 480, 29 Am. Rep. 693; *Ins. Co.* v. *McCormick*, 19 Ind. App. 49, 49 N. E. 44, 65 Am. St. Rep. 393. The insurance company also has the right, if it concludes that the policy has been improperly procured, to institute *an action* for the cancellation of the policy within the year. 'The insured may maintain a suit in equity in a proper case to rescind or cancel the contract for fraud on the part of the company or its agent or for breach of contract. In like manner the company may maintain a suit in equity to cancel a policy because of fraud upon the part of the insured or the beneficiary, as the case may be, or because the policy is a wager policy by reason of want of insurable interest.' 25 Cyc. 788; *French* v. *Connely*, 145 Eng. Report (Reprint) 933; *Whittingham* v. *Thorngbourgh*, 23 Eng. Report (Reprint) 734; *Asso.* v. *Palmer*, 53 Eng. Report (Reprint) 768; *Insurance Co.* v. *Dick*, 114 Mich. 337, 72 N. W. 179, 43 L. R. A. 566. The two cases relied on by the defendant (*Ins. Co.* v. *Bailey*, 13 Wall. 616, 20 L. Ed. 501; *Cable* v. *Ins. Co.*, 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188) to sustain the position that the insurance company has no right to bring an action to have the policy canceled are not in point, because, in both of these cases the right was denied upon the ground that an action at law was pending upon the policy, the insured having died, and it was held that the insurance company did not have the right to go into a court of equity as it could set up the defense in a court of law. It follows, therefore, that the conduct of the defendant, in notifying the insured that it would cancel the policy and in tendering the first premium which had been paid, did not rescind or cancel the contract, as the plaintiff

Peters, C. J., dissenting.

did not consent thereto, and amounted to no more than a breach, and that the *remedy of the defendant was to institute an action for cancellation* within the year, and as it did not do so, the policy was in force at the expiration of the year. This is also in accordance with the authorities holding that if the defendant wished to contest and to avoid the payment of the policy and the force of the incontestable clause, it must take *affirmative* action within the time limited by the policy. * * * The meaning of the terms, 'take affirmative action,' 'test the validity of the policy,' if in doubt, is made clear by the decision in *Wright* v. *Benefit Ass'n,* 43 Hun, 65, which was affirmed in 118 N. Y. 237, 23 N. E. 186. * * * We are therefore of opinion as the plaintiff had an insurable interest in the life of the insured when the policy was issued; and as *no action* was brought by the defendant within one year from the date of the policy to have the contract of insurance *canceled or rescinded,* that the incontestable clause was in force at the death of the insured, and that the defendant is precluded thereby from relying on the defenses set up." *American Trust Co.* v. *Life Ins. Co.,* 92 S. E. (N. C.) 706, 711 (1917). "It does not follow, however, that we concur in appellant's views respecting the rights of the parties under such a construction, but rather that if, as a result of such investigation or of knowledge otherwise obtained, the insurer desires to contest the policy, appropriate steps to that end, either by a defense to an action brought on the policy in case of the death of the insured, or *by proper affirmative action* must be taken within the year, otherwise that the policy becomes incontestable, save as to conditions excepted from the noncontestable clause. Such a construction is in harmony with the language of the stipulation, and does not necessitate the interpolation of words, phrases or clauses not found therein." *Ebner*

v. *Ohio State Life Ins. Co.*, 121 N. E. (Ind.) 315, 320 (1918). "If, therefore, there is nothing in the clause itself changing its terms or effect upon death of the insured within one year, if the clause was inserted for the benefit of the insurance company, to enable it to increase its business, if the period of one year after which the policy was to become incontestable, was to afford opportunity to the company to make its investigations and *to commence an action* for the cancellation of the policy, and if during the whole of the year some one has been in existence, the beneficiary, against whom an action could be brought, we see no reason for refusing to give the plaintiff the full benefit of the clause as it is written. The death of the insured did not place the defendant at any disadvantage under the policy, nor stop its investigations, nor did it affect its right to commence an action, and in most cases death would enure to the benefit of the company, if it contemplated an action to cancel the policy by removing a hostile witness." *Hardy* v. *Phoenix Mut. Life Ins. Co.*, 104 S. E. (N. C.) 166, 168 (1920). "It clearly appears, and in fact it is indisputable, that more than one year had elapsed since the issuance of the policy before *any act was done or action taken* by the defendant *to contest it*. Thus the defendant thereafter is, by the terms of its contract, precluded from voiding the policy for any cause whatever, except failure to pay the premium as provided in the policy. * * * In other words, after the expiration of a year, where there is no default in the payment of the premium, and thereafter the death of the insured should occur, the defendant has no defense against the collection or payment of the amount specified in the policy. It, in substance, has stipulated to that effect in its policy." *Plotner* v. *Northwestern Nat. Life Ins. Co.*, 183 N. W. (N. D.) 1000, 1003 (1921). "The insurance company agreed with

Peters, C. J., dissenting.

the insured, if he would buy this policy for the benefit of his wife, it would not contest the payment of the insurance money after the expiration of one year from the date of the policy. The defendant assumed this clause gave it the arbitrary right to cancel the policy at any time within the year, regardless of the rights of the insured. This clause does not mention cancellation; it provides the conditions under which the policy shall be incontestable. Webster's International Dictionary defines these words as follows: 'Contest: Earnest struggle for superiority, defense, victory, etc.; competition; emulation; strife or argument.' 'Cancel: To annul or recall; to mark out by a cross line or lines; to strike out; to blot out or obliterate; specif., of legal documents, to annul, or make void or invalid, by such marking, or (by extension) in any way.' To cancel presupposes power or authority to do the act—cancel the contract. To perform the physical act of cancelling a contract by obliterating it, drawing lines through it to strike it out or by writing upon it 'Canceled,' without the authority to cancel it, is a nullity, and the contract remains in full force and effect. This clause does not even purport to give the insurance company authority to cancel the contract. It may only contest it under certain conditions and upon certain grounds and within a specified time. A contest is an earnest struggle for superiority, or a defense. Reserving in a contract the right to contest any of its terms or provisions presupposes the right to resist such contest, *and that such contest shall take place before some person or tribunal with power and authority to decide the questions raised* by such contest." *Reliance L. Ins. Co.* v. *Thayer,* 203 Pac. (Okl.) 190, 192 (1921). "The language is not ambiguous. It admits of no reasonable construction, as the courts have said in the cases already cited, other than that the company may have one year,

and no more, for investigation of the questions material to its risk, and if it does not within that time, either as plaintiff or defendant, contest the policy, it cannot do so afterward. Such contest can be made *only by proceedings in court* to which the insurer and the insured, or his representatives or beneficiaries, are parties. *American Trust Co.* v. *Life Ins. Co. of Virginia, supra; Mutual Life Ins. Co.* v. *Buford, supra.*" *Ramsay* v. *Old Colony Life Ins. Co., supra.* "The question seems to have been resolved against the defendant by the Illinois Supreme Court and the construction of the incontestable clause contended for by plaintiff upheld, namely, that under the clause the defendant has two years from the date of the policy *in which to take affirmative action to cancel the same* or by a defense to a suit on the policy by the beneficiary within that period, and that *if no action is taken* within the two-year period the defendant is cut off from all defenses except nonpayment of premium, and the fact that the insured died within the period makes no difference." *Lavelle* v. *Met. Life Ins. Co.,* 238 S. W. (Mo.) 504 (1922). "Stipulations to the effect that a policy or certificate shall become incontestable for fraud in procuring the same after the lapse of a specified period from the date of its issue have been held valid as creating a short statute of limitations in favor of the insured, and as giving the insurer a limited period for the purpose of *testing* the validity of the policy. In such cases the company or association cannot set up fraud as a defense if the period so fixed is sufficient to enable the company or association, by the exercise of proper diligence, to ascertain whether fraud has been practiced or not." *Royal Circle* v. *Achterrath,* 68 N. E. (Ill.) 492, 496 (1903). "An effect of the provision in question was to fix a time limit for a contest of the policy by the insurer on a ground other than the nonpayment of premium.

Peters, C. J., dissenting.

A contest so provided for *imports litigation, the invoking of judicial action* to cancel or prevent the enforcement of the policy, either by a suit to that end or by a defense to an action on the policy. *A mere denial or repudiation by the insurer of its liability under the policy, accompanied by a tender of the premium paid, is not a contest,* within the meaning of the provision. *American Trust Co.* v. *Life Insurance Co.,* 173 N. C. 558, 92 S. E. 706; *Lavelle* v. *Metropolitan Life Ins. Co.,* 209 Mo. App. 330, 238 S. W. 504; *Pratt* v. *Breckinridge,* 112 Ky. 1, 23, 65 S. W. 136, 66 S. W. 405." *N. W. Mut. Life Ins. Co.* v. *Pickering, supra.* "Incontestable means not contestable. A contest in law implies an *adversary proceeding* in which matters in controversy may be settled by the courts upon issue joined. The great body of policy holders are persons who are not learned in the law and who have no knowledge of the judicial construction of pleadings. In the application of the rule just announced, we think the natural and most reasonable view is to hold that the insurer has not contested the policy until it has *acted* in the premises. The contract provides that the policy shall be incontestable after one year, and no action on the part of the insured or of the beneficiary can relieve the company of its duty to act. In order to contest the policy it was required to file an answer to the suit brought by the beneficiary within one year, *or to have instituted an action of its own in equity to cancel the policy on the ground of fraud.*" *Missouri State Life Ins. Co.* v. *Cranford, supra.* "The remedy of the defendant was to institute an action for cancellation within a year, and if it did not do so the policy was in force at the expiration of the year. In disposing of this question the learned chancellor, in his opinion, said: 'It takes two to make a contract and likewise it takes two to rescind one (*Ault* v. *Dustin,* 100 Tenn. 366, 45 S. W. 981), or the judgment

of a court of competent jurisdiction at the instance of the party having a good ground for rescission. It is true that the defendant undertook to rescind the contract in this case upon the ground of complainant's fraud in procuring it, on August 29, 1922, by delivering to complainant on that date a written notice to that effect and demanding the surrender of the policy. But complainant refused to agree to the rescission and refused to surrender the policy. The contract was therefore not rescinded merely by the act of the defendant in giving said notice. It was open to the defendant thereafter to repent of its act and treat the policy as in full force and effect or it *might elect to have its right to rescind tested and enforced by a court, either by itself instituting a suit for that purpose or by interposing it as a defense if sued.* In my opinion it takes the one or the other of these steps to constitute a contest of the policy within the meaning of the statute and the contractual limitation found in the policy. In the instant case this was not done until the answer and cross-bill was filed on October 16, 1922, which was after the one year had elapsed in any view of the date of issue of the policy.' " *Thistle* v. *Equitable Life Assur. Soc.*, 261 S. W. (Tenn.) 667, 668 (1924). See also *Jefferson Standard Life Ins. Co.* v. *McIntyre, supra; Humpston* v. *State Mutual Life Assur. Co.*, 256 S. W. (Tenn.) 438; *Great Western Life Ins. Co.* v. *Snavely*, 206 Fed. 20; *Dibble* v. *Reliance Life Ins. Co.*, 170 Cal. 199, 149 Pac. 171; *Weil* v. *Federal Life Ins. Co.*, 264 Ill. 425; *Reagan* v. *Union M. L. Ins. Co.*, 189 Mass. 555, 76 N. E. 217; *Flanigan* v. *Federal Life Ins. Co.*, 231 Ill. 399, 83 N. E. 178; *Mutual Life Ins. Co.* v. *New*, 125 La. 41, 51 So. 61; Central Law Journal, Vol. 97, No. 3, p. 40.

It is true that the cases are not entirely uniform as to what affirmative action must be taken by the insurer in order to exempt it from the incontestability clause found

in policies of life insurance. Some of the cases hold that this step must be by court action. Still other cases that it may be either by court action or other "affirmative" action. There is but the one exception, the *Rose* case, which holds that rescission may be had by act of the insurer (called by Bigelow "rescission *in pais*"), and when so taken by the insurer against the assured on the ground of fraud prior to the elapsation of the first year of the policy it renders available to the insurer either a suit in equity for cancelation or the defense of fraud in an action at law by the beneficiary, even though said suit be filed or action brought after the elapsation of such period. All the cases are unanimous, however, in holding that mere denial of liability is not sufficient. No difficulty is encountered in appreciating the reason underlying those decisions which hold that court action is necessary. If in an action brought by the beneficiary the insurer answers prior to the expiration of the first year of the policy, any defense of which the answer is capable is available to it irrespective of whether final judgment is entered during or after the expiration of the first year of the policy, the judgment operating as of the date of the filing of the answer, and, if fraud be found, determining the legal existence of the contract within the first year of the life of the policy. Similarly in the event of suit in equity brought by the insurer during the first year of the policy for rescission of the policy on the ground of fraud. A decree of cancelation operates as of the date that suit is filed and serves to cancel the policy *ab initio*. Hence by the decree of cancelation in equity the contract of insurance will have been set aside within the first year of its life after which it would be of no further force or effect. In other words, in either event, that is, by a judgment at law against the beneficiary upon the defense of fraud or by a decree in equity of

cancelation, the legal existence of the policy is judicially determined during and prior to the expiration of the first year of the policy. This is none the less true even though the beneficiary delayed action at law until the expiration of the first year of the policy. If the insurer had previously and during the first year of the policy brought a suit for cancelation, a court of equity having acquired jurisdiction would retain it until decree and the action at law would necessarily abate and await the final determination of the suit in equity.

The same theory is involved in the event of rescission by act of the insurer (decided in the *Rose* case), that is, that rescission by act of the defrauded party operates to forthwith cancel the policy *ab initio*.

The majority rely for their conclusion upon the *Rose* case. But the *Rose* case does not decide that the mere denial of liability by the insurer is a "contest." On the contrary it decides that rescission taken by the insurer against the insured (rescission *in pais*) cancels the policy as of the date of rescission and if accomplished within the first year of the policy exempts the insurer from the application of the one-year incontestability clause. The majority lack the support of any authority for their conclusion that a mere denial of liability by the insurer during the first year of the policy exempts it from the application of a one-year incontestability clause. And even assuming, but not deciding, that the legal effect of rescission *in pais* as decided by the *Rose* case is to cancel the policy forthwith, then the facts in the *Rose* case furnish an example of "affirmative" action which some of the authorities say the insurer in order to be exempt from the provisions of an incontestability clause must take prior to such clause coming into effect and may with "actions in court" be included in the steps, the immediate or ultimate legal effect of which is to can-

cel the policy within the first year of its life or to render it within that time of no further effect. But whether rescission by action of the insurer prior to the incontestability clause coming into effect exempts the insurer from its application is not involved in the instant case for the reason that the acts of the insurer of April 7, 1923, did not amount to a rescission of the policy, rendering the *Rose* case inapplicable.

It is fundamental that rescission may be had against the fraudulent party to the contract or his legal representatives. "Inasmuch as the right of rescinding a voidable contract is alternative and coextensive with the right of affirming it, it follows that a voidable contract may be avoided by or against the personal representatives of the contracting parties." Wald's Pollock on Contracts, marg. p. 582, top p. 712. Whatever premiums were repayable to effect rescission were payable to the assured or his personal representatives. "The premium if returnable is due to the assured." 3 Joyce on Insurance, Sec. 1428. " * * * She" (the beneficiary) "had * * * not the title to support an action of law upon it in her own name against the defendants or for the recovery of the premiums paid by her husband" (the assured). *McDonald* v. *Metropolitan Life Ins. Co.*, 38 Atl. (N. H.) 500, 501. There is no privity between the beneficiary and the assured. "Beneficiaries of a life insurance contract have, upon the repudiation of the policy by the company, no such interest in it that enables them to recover the premiums paid, that right being invested in the insured." 3 Joyce on Insurance, Sec. 1428a. The beneficiary upon the death of the insured becomes vested with a legal demand against the insurer for the amount of the policy. " * * * by the death of the *cestui que vie* the obligation to pay as expressed in the policies became fixed and absolute, subject only to the condition to give notice

and furnish proof of that event within ninety days. Notice having been given and the required proof furnished, the obligation to pay certainly became fixed by the terms of the policies and the sums insured became a purely legal demand   *   *   *." *Insurance Co.* v. *Bailey,* 13 Wall. (U. S.) 616, 622.

In the instant case the offer of the return of the premium was made to the beneficiary. It does not appear that she was in any way connected with the estate of the deceased assured. Nor does it appear that during the first year of the policy there was no legal representative of the estate of the assured upon whom tender of the premium might have been made. The offer to return the premium paid by the assured might as well have been made to a stranger. The burden of showing that there was no legal representative upon whom tender could be made devolved upon the insurer and not the beneficiary. It is upon the insurer and not the insured to show that it was wholly or partially exempted from the time limitation of the incontestability clause by reason of the absence of a legal representative of the assured. The majority say, "It is far from clear that a tender of the premium was necessary in the case at bar to constitute a rescission *in pais.*" How can a rescission *in pais* be accomplished without an offer by the defrauded party to return to the fraudulent party the consideration received by the former under the alleged fraudulent contract? The defrauded party must rescind within a reasonable time after the discovery of the fraud or he will be taken as having affirmed the fraudulent contract. And how can rescission be had against a third party—a mere volunteer—for whose benefit the contract was made? Unquestionably the rights of the beneficiary depend upon the integrity of the insurance contract. But rescission must be taken against the fraudulent party (assured)

or his legal representative. Nor that the defrauded party was "anxious to return the premium to the person entitled to it" can it be said that rescission was thereby accomplished.

In the case of *Oplinger* v. *N. Y. Life Ins. Co.*, 98 Atl. (Pa.) 568, a policy of insurance was issued by the insurer to Allen A. Oplinger on February 24, 1913, in which the assured's wife was named as beneficiary. The assured died in January, 1914. On January 22, 1914, the defendant company notified the beneficiary that it rescinded the contract of insurance on the grounds of fraudulent representations and concealment of material facts by the assured. At the same time it tendered a return of the premiums, which tender was refused. Suit was then brought by the beneficiary. The defendant averred the rescission of the contract and paid the amount of the tender into court. As to the effect of the alleged rescission of the contract the trial judge ruled: "If this rescission had been dated the 22d day of January, 1913, instead of 1914, and Allen Oplinger had still been living * * * a different question would be presented, and it would be my duty to charge you * * * as to the effect of a rescission; but * * * Mr. Oplinger being dead the case must be tried by us just as if there had not been this formal rescission and as if they (the insurance company) were defending * * * in the first instance on the ground of fraudulent representations and concealments." The appellate division affirmed the judgment of the trial court, and in commenting upon this instruction said: "We see no error in the legal attitude thus assumed by the court below. After the death of the insured the defendant company could not change the status of the beneficiary by an attempted rescission of the insurance contract." In the case of *Ramsay* v. *Old Colony Life Ins. Co., supra,* the

court said: "The appellant's right of action to contest the validity of the policy was necessarily in abeyance after the death of the insured until the appointment of an administrator. There was no person in existence to be sued, the estate of the insured being the beneficiary in the policy, until such appointment. There was no person to whom the company could tender the premiums which it had received or against whom it could proceed for the cancellation of the policy."

The conclusion is inevitable that the insurer by its acts of April 7, 1923, did not effect a rescission of its policy. It is admitted that no other action was taken by it during the first year of the policy. Hence the interposition of fraud by the insurer during the incontestable period has for its sole justification the mere refusal by it to pay the beneficiary the amount of the policy upon the ground of fraud. This in the opinion of the majority was enough, and their opinion proceeds upon the theory that the insurer being by the terms of the policy prohibited from contesting it after the elapsation of the first year of the policy it may by implication "contest" the policy during the first year; that the denial of liability on the ground of fraud is a "contest;" that the insurance company inaugurated a "contest" within the first year of the policy and hence the incontestability clause does not apply. The word "contest," however, nowhere appears in the policy. The policy provides that it shall be "incontestable" after the elapsation of a certain period. It does not say that it shall be "incontestable" during one period and "contestable" during another. That is the inference of the majority. There is no necessity of interpretation. The incontestability clause is clear and unambiguous. We are only concerned with its meaning after it comes into operation and effect. It has no meaning until the first year of the policy has

elapsed and then only, for the purposes of the instant case, when an insurer defends or "contests" an action at law by the beneficiary after the first year of the policy has elapsed, whereupon the sole question is of the justification of the contest in the face of the plain, clear, unequivocal and absolute inhibition of the incontestability clause.

But assuming that a denial of liability may be dignified by the term "contest," what is its effect? There is no question but that the insurer cannot contest after the elapsation of a year. What is there then in this mere denial of liability that renders inoperative the incontestability clause after the elapsation of the first year of the policy? To say that the denial of liability is a "contest" without showing wherein and how such contest exempts the insurance company from the application of the incontestability clause means absolutely nothing. The majority state that the rights of the insurer to contest during the first year of the policy "are as broad as they would have been if the clause of incontestability were not in the policy." Let us assume this to be true. Does this unlimited power of contestability during the first year of the policy, in the absence of an act of "contest," the immediate or ultimate legal effect of which is to neutralize the ensuing prohibition, detract one iota from the absolute prohibition against contest which becomes effective after this period of unlimited freedom has elapsed? To say that one may at one time perform an act prohibited at another time does not detract from the prohibition when effective. By mere denial of liability the policy is not canceled as by a decretal order of cancelation in equity. By the mere denial of liability upon the ground of fraud the contract is not avoided and the defrauded party restored as upon rescission by the act of the defrauded party, as held in the *Rose* case.

Wherein does the mere denial of liability justify the interposition of the defense of fraud after the elapsation of a year in the face of the plain prohibition of the incontestability clause? For the insurer to say that it "contested" the policy within the first year of its life is not enough. It must show that it has done something prior to the expiration of the first year of the life of the policy, the immediate or ultimate legal effect of which is to exempt it from the prohibition of the incontestability clause, and failing this the incontestability clause operates to foreclose the defendant from the defense of fraud.

To hold that the mere denial of liability during the first year of the policy renders the incontestability clause of no application and permits the insurer to defend at any time against an action by the beneficiary seems to me to render the incontestability clause meaningless and of no effect and places the insured and beneficiary in the same position as though it were absent from the policy.

The judgment of the trial court should be affirmed.